UNITED STATES of America

v.

Brandon TANN, Appellant.

No. 08–2378.

United States Court of Appeals,
Third Circuit.

Argued March 10, 2009.

Filed: Aug. 24, 2009.

534

Edson A. Bostic, Federal Public Defender, Daniel I. Siegel (Argued), Legal Research and Writing Attorney, Office of the Federal Public Defender, Wilmington, DE, Counsel for Appellant.

Colm F. Connolly, United States Attorney, Shawn A. Weede (Argued), Assistant United States Attorney, Wilmington, DE, Counsel for Appellee.

Before FUENTES, CHAGARES, and ALDISERT, Circuit Judges.

OPINION OF THE COURT

CHAGARES, Circuit Judge.

Brandon Tann was convicted on two counts of violating the felon-in-possession statute, 18 U.S.C. § 922(g)(1), for the illegal possession of a firearm and ammunition. On appeal, Tann contends that because the firearm and ammunition were possessed simultaneously, he should have been convicted and sentenced on only one violation of § 922(g)(1). For the reasons that follow, we will affirm in part and remand in part.

I.

The facts pertinent to this appeal are undisputed. On April 11, 2007, officers with the Wilmington Police Department received information that Tann, an individual with whom the officers were familiar, was in possession of a handgun at the 1100 block of A Street. Responding officers observed Tann at that location. When the officers exited their vehicles in full uniform, Tann ran into a residence at 1004 A Street, and closed the door behind him.

The officers followed Tann into the residence and up its stairs. When police reached the top of the stairs, Tann exited a bathroom. Police ordered Tann to the ground and placed him in custody. The Presentence Report ("PSR") describes the events that followed:

A search of the bathroom was conducted where officers located a black .9mm Taurus handgun, Serial Number TQH07238, with duct tape on the bottom of the magazine. One brass Luger .9mm round was found in the chamber,

and ten Luger .9mm rounds were found in the magazine. After waiving his *Miranda* rights, the defendant stated the gun was not his, but he had some ammunition in his pocket. Additionally, the defendant stated he had just flushed two bags of marijuana down the toilet. Thereafter, an officer recovered 14 .9mm rounds of ammunition from a clear plastic bag in Mr. Tann's pocket. The ammunition found in the defendant's pocket and the ammunition from the .9mm Taurus firearm were identical. SR ¶ 7.

Tann was charged with two violations of § 922(g)(1).[1] Count One charged that on April 11, 2007, Tann unlawfully possessed a .9 mm handgun. Count Two charged that on April 11, 2007, Tann unlawfully possessed 14 rounds of. 9 mm ammunition. On October 15, 2007, Tann entered a guilty plea to one count of being a felon in possession of a firearm, and one count of being a felon in possession of ammunition, both in violation of 18 U.S.C. §§ 922(g)(1). At sentencing, the District Court imposed a 57–month term of imprisonment on the possession of a firearm conviction (Count One) and a concurrent sentence of 57 months of imprisonment on the possession of ammunition conviction (Count Two). Pursuant to 18 U.S.C. § 1303, the District Court imposed special assessments of $100.00 on each count. This appeal followed.

## II.

■ Tann contends that his two convictions for violating 18 U.S.C. § 922(g) constitute a single unit of prosecution, and that the District Court erred in entering

judgments of conviction and sentences on both counts.[2] Tann, however, failed to raise this argument before the District Court. Federal Rule of Criminal Procedure 52(b) grants reviewing courts limited authority to correct errors not timely raised and prescribes a plain error standard of review in these circumstances. *See United States v. Olano*, 507 U.S. 725, 731, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *see also United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (noting that Rule 52(b) is only "to be 'used sparingly'" and "to correct only 'particularly egregious errors'") (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). The standard set forth in Rule 52(b) requires that "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *Olano*, 507 U.S. at 732, 113 S.Ct. 1770 (quoting Rule 52(b) (last alteration in original)). Further, "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations marks, citations, and alterations omitted).

## A.

■ We first consider whether the District Court's entry of separate convictions and sentences for simultaneous possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) constituted "error." *See Olano*, 507 U.S. at 732–33, 113 S.Ct. 1770 (noting that "[d]eviation from a legal

1. Section 922(g)(1) provides, in relevant part: It shall be unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammu-

nition which has been shipped or transported in interstate or foreign commerce.
18 U.S.C. § 922(g)(1).

2. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

rule" constitutes "error" under Rule 52(b)). This, in turn, requires us to determine " '[w]hat Congress has made the allowable unit of prosecution' " for purposes of § 922(g)(1). *See Bell v. United States,* 349 U.S. 81, 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (quoting *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 97 L.Ed. 260 (1952)).

Our starting point is the Supreme Court's decision in *Bell v. United States.* In *Bell,* as in this case, the Supreme Court considered whether multiple violations of a statute, occurring in a single transaction, supported multiple convictions under the statute. The specific issue in *Bell* was whether two offenses or only one offense occurred under the Mann Act, 18 U.S.C. § 2421, where the defendant transported two women across state lines on the same trip and in the same vehicle. The Mann Act made it a felony to transport in interstate commerce " '*any* woman or girl for the purpose of prostitution.' " *Bell,* 349 U.S. at 82, 75 S.Ct. 620 (quoting § 2421) (emphasis added). Analyzing § 2421, the Court found no clear statement of intent as to the allowable unit of prosecution and commented that Congress surely could have "defin[ed] what it desire[d] to make the unit of prosecution." *Id.* at 83, 75 S.Ct. 620. The Court then determined that "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity" for the defendant. *Id.* Accordingly, the Court further determined that when Congress fails to set the unit of prosecution "clearly and without ambiguity, doubt will be resolved

against turning a single transaction into multiple offenses." *Id.* at 84, 75 S.Ct. 620. Applying this rule to the facts before it, the Court held that only one offense occurred under the Mann Act. *See id.* at 82–84, 75 S.Ct. 620.

This Court has not yet addressed whether the simultaneous possession of a firearm and ammunition constitutes a single unit of prosecution under § 922(g)(1). However, we do not write on a blank slate.

In *United States v. Frankenberry,* 696 F.2d 239, 245 (3d Cir.1982), we held that the simultaneous receipt of more than one weapon cannot support multiple convictions under 18 U.S.C. § 922(h),[3] the predecessor to the current version of § 922(g)(1). There, we acknowledged that our holding was in accord with every other court that had considered the issue and that "[a]ll of these decisions are based on the application of the rule of lenity as expressed in *Bell* . . . ." *Id.* at 245. We noted that "as in *Bell,* Congress could have defined the offense in such a way as to make the offender liable to cumulative punishment for simultaneous action," but has chosen not "to do so in unambiguous language." *Id.* As a result, applying *Bell* and other precedent, we concluded "that simultaneous receipt of more than one weapon covered by section 922(h)(1) supports conviction for only one offense." *Id.*

In *United States v. Marino,* 682 F.2d 449 (3d Cir.1982), we held that the simultaneous possession of several firearms by a convicted felon constitutes a single offense under the former 18 U.S.C. § 1202(a)[4] absent a showing that the weapons were

---

**3.** Section 922(h) prohibited " 'any person—(1) . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to receive *any firearm or ammunition* which has been shipped or transported in interstate or foreign commerce.' " *Frankenberry,* 696 F.2d at 244 (quoting § 922(h)(1)) (emphasis added).

**4.** At the time we considered the statute, § 1202(a) made it a crime when a person convicted of a felony " '[r]eceives, possesses, or transports in commerce or affecting commerce . . . *any firearm.*' " *Frankenberry,* 696 F.2d at 244 (quoting § 1202(a)) (emphasis added).

separately stored or acquired. *Id.* at 455. There, we found uncertainty as to the unit of prosecution intended by Congress for violations of § 1202(a) because of the ambiguous use of the word "any" preceding the object of the offense. *Id.* at 454. We observed that "[i]n many other instances in which the word 'any' was used in a statutory definition of the unit of prosecution ... the statute has been found ambiguous." *Id.* (citing *Bell*, 349 U.S. at 81, 75 S.Ct. 620); *see also United States v. Coiro*, 922 F.2d 1008, 1014 (2d Cir.1991) (noting that "the word 'any' has typically been found ambiguous in connection with the allowable unit of prosecution" (quotation marks and citations omitted)). Finally, we noted that our holding was in agreement "with all the other Circuits which have addressed this question." *Marino*, 682 F.2d at 454.

■ The language of the current § 922(g)—and, in particular, the use of the word "any"—is consistent with, and equally ambiguous as, the then-effective § 922(h) and § 1202(a) addressed in *Frankenberry* and *Marino*, respectively. We apply the rationale of those cases as well as that of *Bell* to hold that Tann's possession of both a firearm and ammunition, seized at the same time in the same location, supports only one conviction and sentence under § 922(g)(1). In so holding, we join all of our sister courts of appeals that have addressed this issue and are in

agreement that the allowable unit of prosecution under § 922(g) is the incident of possession, regardless of whether a defendant possessed more than one firearm, or possessed a firearm and ammunition.[5] As a result, we conclude that the District Court erred in convicting and sentencing Tann on both counts charged under § 922(g)(1).

### B.

■ Pursuant to Rule 52(b), however, we may not reverse for error alone, but must also resolve whether the error is "plain." An error is plain if it is "clear" or "obvious" under current law. *Olano*, 507 U.S. at 734, 113 S.Ct. 1770.

■ Although our holding regarding the allowable unit of prosecution under § 922(g) is a matter of first impression for this Court, we find that the District Court's error is plain. *See United States v. Miller*, 527 F.3d 54, 73 (3d Cir.2008) (concluding that failure to merge lesser-included offense at sentence was plain error, even though question was matter of first impression). In making this determination, we note this Court's analyses in *Frankenberry* and *Marino*, dealing with analogous statutes. We also note that those courts of appeals that have addressed this question are in unanimous agreement that § 922(g)(1) does not sup-

---

5. *See United States v. Parker*, 508 F.3d 434, 440 (7th Cir.2007); *United States v. Olmeda*, 461 F.3d 271, 280 (2d Cir.2006); *United States v. Richardson*, 439 F.3d 421, 422 (8th Cir.2006) (en banc); *United States v. Verrecchia*, 196 F.3d 294, 297–98 (1st Cir.1999); *United States v. Dunford*, 148 F.3d 385, 390 (4th Cir.1998); *United States v. Cunningham*, 145 F.3d 1385, 1398–99 (D.C.Cir.1998); *United States v. Keen*, 104 F.3d 1111, 1119–20 (9th Cir.1996); *United States v. Hall*, 77 F.3d 398, 402 (11th Cir.1996), *abrogation recognized by Hunter v. United States*, 559 F.3d 1188, 1190 (11th Cir.2009); *United States v. Hutching*, 75 F.3d 1453, 1460 (10th Cir.1996); *United*

*States v. Berry*, 977 F.2d 915, 919 (5th Cir. 1992) ("The evil Congress sought to suppress by section 922 was the arming of felons; the section is based on the status of the offender and not the number of guns possessed. For the same reasons, we cannot conclude that Congress intended the simultaneous possession of ammunition to stand as a distinct unit of prosecution."); *United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir.1990) (holding that separate counts under § 922(g) for ammunition and firearm are appropriate units of prosecution, but must merge for purposes of conviction and sentencing).

port multiple convictions for the simultaneous possession of more than one firearm, or a firearm and ammunition. *See infra* note 5.[6] We therefore hold that the District Court's error in convicting and sentencing Tann on both counts charged under § 922(g)(1) is plain.

#### C.

■ Having determined that the entry of multiplicitous convictions was error, and that the error is plain, we next consider whether that plain error "affect[ed] substantial rights." Fed.R.Civ.P. 52(b). In most cases, to have affected a defendant's substantial rights, a plain error must have caused the defendant prejudice, in that it "affected the outcome of the district court proceedings." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. It is the defendant who has the burden to make "a specific showing of prejudice" to meet the affected substantial rights requirement of Rule 52(b). *Id.* at 735, 113 S.Ct. 1770.

#### 1.

■ Two Supreme Court decisions set the legal landscape for analyzing the issue of whether multiple convictions and sentences, unauthorized by Congress, affect substantial rights.

In *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), the Court held that a felon possessing a firearm may not be convicted under both § 922(h) and § 1202(a) for possessing and receiving the same weapon. 470 U.S. at 858, 105 S.Ct. 1668. In such circumstances, the Court rejected the argument that an appropriate remedy could be "ordering one of the sentences to be served concurrently with the other." *Id.* at 864, 105 S.Ct. 1668. Instead, the Court held that the proper remedy would be to vacate one of the convictions. *Id.* In so holding, the Court recognized that "[o]ne of the convictions, as well as its concurrent sentence, is unauthorized• punishment for a separate offense." *Id.* The Court then focused on the effect a second conviction would have on the defendant, and reasoned that:

> The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction,* apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying criminal conviction. Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

*Id.* at 864–65, 105 S.Ct. 1668 (citations omitted) (emphasis in original).

---

**6.** The Government does not argue that the District Court's decision to enter a conviction and impose a sentence on each count separately was without error. Indeed, Tann points out that the United States Attorneys' Manual (the "Manual") advises that, while it is appropriate to charge a defendant with separate counts of unlawful weapons or ammunition possession under § 922(g), and seek a verdict on each, Congress did not intend multiple punishments for simultaneous possession of weapons and/or ammunition. U.S. Dep't of Justice, United States Attorney's Manual § 9–63.514 (1997) (Prosecutions Under 18 U.S.C. § 922(g)). Tann further points out that the Manual instructs, "Federal prosecutors should not seek consecutive or concurrent sentences in this situation. Rather, the government should urge the court to 'merge' or 'combine' the multiple § 922(g) convictions . . . into one conviction for sentencing purposes." *Id.* (citing *Throneburg,* 921 F.2d at 657).

The Supreme Court reaffirmed the *Ball* holding in *Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). In *Rutledge,* the Court held that a defendant's conspiracy conviction was a lesser-included offense of his conducting a continuing criminal enterprise conviction. 517 U.S. at 294, 296, 116 S.Ct. 1241. The Court then addressed the fact that the district court imposed a concurrent sentence and a $50 special assessment for the second conviction. The Court recognized that "[u]nder *Ball,* the collateral consequences of a second conviction make it as presumptively impermissible to impose it as it would be to impose any other unauthorized cumulative sentence." *Id.* at 302, 116 S.Ct. 1241. Turning to the $50 special assessment, the Court noted that although the defendant failed to challenge it below, the additional assessment was "as much a collateral consequence of the conspiracy conviction as the consequences recognized by *Ball* would be." *Id.* at 302–03, 116 S.Ct. 1241. The Court thus held that— despite the defendant's failure to object before the trial court—the second conviction constituted "cumulative punishment not authorized by Congress." *Id.* at 303, 116 S.Ct. 1241. As a result, the Court in *Rutledge* concluded that " '[o]ne of [defendant's] convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense' and must be vacated." *Id.* at 307–08, 116 S.Ct. 1241 (quoting *Ball,* 470 U.S. at 864, 105 S.Ct. 1668) (first alteration in original).

We concluded that multiple convictions and sentences, unauthorized by Congress, affect substantial rights in *United States v.*

*Miller.* In that case, we first determined that possessing child pornography is a lesser-included offense of receiving child pornography, and that the district court's entry of separate convictions on each charge contravened the Double Jeopardy Clause. 527 F.3d at 71–72. In undertaking a plain error analysis, we determined that the entry of convictions under both statutes at issue was error and that the error was plain. *Id.* at 73. Turning to the issue of whether the plain error affected substantial rights, we recognized that " '[t]he Fifth Amendment right to be free from duplicative prosecutions and punishment is a hallmark of American jurisprudence.' " *Id.* (quoting *United States v. Jackson,* 443 F.3d 293, 301 (3d Cir.2006)) (alteration in original). We also recognized that "[t]he entry of separate convictions for violation of [both statutory sections] saddles the defendant with separate $100 special assessments and threatens him with 'the potential adverse collateral consequences' of two convictions on child pornography charges." *Id.* at 73–74 (quoting *Rutledge,* 517 U.S. at 302, 116 S.Ct. 1241). We therefore concluded that the defendant's substantial rights had been affected by the entry of separate convictions on both counts. *Id.*

As in *Miller,* Tann's substantial rights have been affected by the entry of separate convictions for Counts One and Two. Tann's second conviction, at a minimum, carried with it a concurrent sentence and an additional $100 assessment. Moreover, it is clear that Tann may face adverse consequences based on the second § 922(g) conviction alone. Following *Ball* and *Rutledge,* numerous courts of appeals,[7]

---

**7.** *See, e.g., United States v. King,* 554 F.3d 177, 180–81 (1st Cir.2009); *United States v. Ogba,* 526 F.3d 214, 237 (5th Cir.2008) ("[S]entences with special assessments imposed for individual counts are not in fact 'concurrent,' no matter how small the special assessments. Nor do we take lightly the collateral effects of

sentences, whether concurrent or consecutive. More importantly, the sentence violates double jeopardy."); *United States v. Zalapa,* 509 F.3d 1060, 1064–65 (9th Cir.2007); *United States v. Parker,* 508 F.3d 434, 441 (7th Cir.2007); *United States v. Bennafield,* 287

including this Court in *Miller*, have concluded that a defendant's substantial rights are affected by the additional, unauthorized conviction, even when the immediate practical effect may not increase the defendant's prison term, or may only be a negligible assessment.

2.

The Government concedes that our decision in *"Miller* stands for the rule articulated by [Tann]." Gov't Br. 14. However, the Government argues that *"Miller* lacks precedential weight" because it conflicts with our earlier decision in *United States v. Gricco*, 277 F.3d 339 (3d Cir.2002). Gov't Br. 15. The Government supports its argument by pointing to our Internal Operating Procedure ("IOP") 9.1 [8] and our cases applying that IOP that hold if our cases conflict, then "'the earlier is the controlling authority and the latter is ineffective as precedent[ ].'" *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir.2008) (quoting *United States v. Rivera*, 365 F.3d 213, 213 (3d Cir.2004)).

In *Gricco*, the two defendants argued that their convictions for tax evasion, in violation of 26 U.S.C. § 7201, and for making false tax returns, in violation of 26 U.S.C. § 7206(1), merged and that the district court entered convictions and sentences under both statutes in error. 277 F.3d at 350. Because the defendants failed to raise this argument before the district court, we undertook a plain error review of the argument. *Id.* We began our review by noting that "the parties' briefs focus primarily on the question whether the district court committed any error at all." *Id.* Nonetheless, we assumed there was error and that it was plain and proceeded to the issue of whether the defendants' substantial rights were affected. *Id.* at 351. We acknowledged that the sentences imposed on the two defendants were concurrent and that the sentences were not increased by the failure to merge the two counts. *Id.* Further, we stated that "[t]he only immediate practical effects of the concurrent sentences . . . are special assessments totaling $700 for each defendant." *Id.* Citing a decision from the Court of Appeals for the Fourth Circuit,[9] we held that "[w]e do not believe that [defendants] have suffered a deprivation of 'substantial rights'" and, therefore, we found that the standard set forth in Rule

F.3d 320, 324 (4th Cir.2002); *United States v. Gore*, 154 F.3d 34, 48 (2d Cir.1998).

**8.** IOP 9.1 provides: "It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc reconsideration is required to do so."

**9.** The decision cited was *United States v. Roberts*, 262 F.3d 286 (4th Cir.2001). The court in *Roberts* found that it was not a deprivation of substantial rights for the district court to impose "concurrent life and 30-year sentences, rather than consecutive sentences totaling at least 240 years for [one defendant] and 380 for [the other]." *Id.* at 292. The court in *Roberts*, however, did not cite the Supreme Court's Ball or *Rutledge* opinions,

nor did it consider the effect of special assessments on the issue of deprivation of substantial rights, despite *Roberts* being cited for that proposition in *Gricco*. *Id.* at 292–94.

Subsequently, in *United States v. Bennafield*, 287 F.3d 320 (4th Cir.2002), the Court of Appeals for the Fourth Circuit considered whether it was plain error for the district court to enter two judgments of conviction and sentence under 21 U.S.C. § 844(a). Under these more analogous facts, the court found that there was error, that it was plain, and that it affected the defendant's substantial rights. *Id.* at 324. Regarding the defendant's substantial rights, the court reasoned "in addition to being subjected to an additional conviction, which itself can have collateral consequences, *see Ball v. United States* . . . , [defendant] was prejudiced by the additional $100 special assessment." *Id.*

52(b) had not been met. *Id.* The Government is, of course, correct that *Gricco* was decided before *Miller.* We acknowledge as well that both *Ball* and *Rutledge* were decided by the Supreme Court before our aforementioned cases and that *Miller* did not mention *Gricco.* Despite Tann's arguments seeking to distinguish *Gricco* from *Miller,* we find our jurisprudence to be in direct conflict.

■ Our Court makes every effort to maintain a consistent body of jurisprudence and that is an underlying basis for our IOP 9.1. And IOP 9.1 recognizes that our Court, sitting en banc, may correct or revise prior panel decisions of our Court. In the unique circumstance when our panel decisions conflict and our Court has not spoken en banc, however, the earlier decision is generally the controlling authority. *Pardini,* 524 F.3d at 426.

■ While we strive to maintain a consistent body of jurisprudence, we also recognize the overriding principle that "[a]s an inferior court in the federal hierarchy, we are, of course, compelled to apply the law announced by the Supreme Court as we find it on the date of our decision." *United States v. City of Phila.,* 644 F.2d 187, 192 n. 3 (3d Cir.1980); *see also Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 312, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) (observing "once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law"). That is why we have observed that we "should not countenance the continued application in this circuit of a rule, even of our own devising, which is patently inconsistent with the Supreme Court's pronouncements." *Cox v. Dravo Corp.,* 517 F.2d 620, 627 (3d Cir.1975); *see also United States v. Singletary,* 268 F.3d 196, 202 (3d Cir.2001) (noting that "our respect for uniformity of decisions within this Court yields when a prior panel's holding conflicts with a holding of the Supreme

Court"); *United States v. Thevis,* 665 F.2d 616, 626 (5th Cir.1982) (noting that "although ordinarily a panel must adhere to prior decisions of this court, our first duty is to follow the dictates of the United States Supreme Court"), *superceded on other grounds by* Fed. R. Civ. Evid. 804(b)(6), *as recognized in United States v. Zlatogur,* 271 F.3d 1025, 1028 (11th Cir. 2001). Accordingly, a panel of our Court may decline to follow a prior decision of our Court without the necessity of an en banc decision when the prior decision conflicts with a Supreme Court decision. *See Mennen Co. v. Atl. Mut. Ins. Co.,* 147 F.3d 287, 294–95 n. 9 (3d Cir.1998) (holding that IOP 9.1 "gives way when the prior panel's holding is in conflict with Supreme Court precedent"); *Reich v. D.M. Sabia Co.,* 90 F.3d 854, 858 (3d Cir.1996) (finding that "[a]lthough a panel of this court is bound by, and lacks authority to overrule, a published decision of a prior panel ... a panel may reevaluate precedent in light of intervening authority"); *Rubin v. Buckman,* 727 F.2d 71, 74 (3d Cir.1984) (Garth, J., concurring) (observing that where "a holding of this Court is overruled or rejected by the Supreme Court ... [our IOP] does not require in banc consideration in order to align this Court's jurisprudence with Supreme court teaching.").

■ A panel of our Court may decline to follow a prior decision of our Court without the necessity of an en banc decision whether the conflicting Supreme Court decision was rendered before or after our prior decision. *Mennen,* 147 F.3d at 294–95 n. 9. In *Mennen,* the appellant argued that IOP 9.1 could only be avoided when a later Supreme Court decision called for a rejection of a prior panel's decision. *Id.* While we acknowledged that it would be rare for a court of appeals decision to be inconsistent with prior Supreme Court precedent, we rejected appel-

lant's argument. *Id.* In so holding, we explicitly disagreed with "the proposition that a panel opinion which lacks harmony not only with subsequent Supreme Court authority but also with antecedent Supreme Court authority has a greater claim to permanence as circuit precedent than a panel decision undercut by subsequent Supreme Court authority when announced." *Id.* As a result, the fact that we decided *Gricco* after *Ball* and *Rutledge* were decided by the Supreme Court is not relevant to our analysis.

In *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258 (3d Cir. 1995), the panel was confronted with a decision of another panel (*Gasoline Sales v. Aero Oil Co.*, 39 F.3d 70 (3d Cir.1994)) that applied a decision of an earlier panel (*Glessner v. Kenny*, 952 F.2d 702 (3d Cir. 1991)) that was contrary to two Supreme Court cases (*Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) and *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)). We concluded that notwithstanding IOP 9.1, "the *Gasoline Sales* panel's application of [ ] *Glessner* [ ] is [ ] not conclusive here." *Jaguar Cars*, 46 F.3d at 266 n. 6. We explained that the reason for our refusal to apply *Gasoline Sales* was "because the Supreme Court's opinions in *Reves* and *Scheidler* were not called to the panel's attention, and the opinion did not either explicitly or implicitly decide the impact of those cases on the issues raised in that appeal." *Id.; see also Tucker v. Phyfer*, 819 F.2d 1030, 1035 n. 7 (11th Cir.1987) (observing that a prior panel decided a case "without any reference to the Supreme Court's previous holdings" in two cases, and concluding that by declining to follow the prior panel's decision, "we do not view ourselves as violating the prior panel rule; rather we are simply discharging our duty to follow clearly controlling Supreme Court precedent").

We hold that we are not bound by our decision in *Gricco* regarding whether Tann's substantial rights were affected, largely for the reasons we set forth in *Jaguar Cars*. First, the parties in *Gricco* did not focus on whether the asserted error affected substantial rights. Indeed, we noted in *Gricco* that "the parties' briefs focus primarily on the question whether the district court committed any sort of error at all." 277 F.3d at 350. Second, neither *Ball* nor *Rutledge* were mentioned in *Gricco's* brief analysis of the affecting substantial rights issue. Third, *Gricco's* holding plainly conflicts with the Supreme Court's decisions in *Ball* and *Rutledge.* For instance, the Court in *Gricco* held that a $700 special assessment for each of the two convictions was insufficient to support vacating one of the judgments of conviction and sentence. *See id.* at 351. The Supreme Court in *Rutledge*, conversely, held that a $50 special assessment on each of the two convictions constituted "cumulative punishment not authorized by Congress" and therefore vacated one of the convictions and sentences. 517 U.S. at 303, 116 S.Ct. 1241. In addition, in *Gricco* we noted that sentences for both convictions did "not increase the length of [defendants'] incarceration," 277 F.3d at 351, and did not grant relief, though in *Ball*, the Supreme Court considered similar circumstances and determined that "the second conviction, even if it results in no greater sentence, is an impermissible punishment" and vacated one of the convictions and sentences. 470 U.S. at 864, 105 S.Ct. 1668. Finally, *Gricco* made no reference to the collateral consequences analysis that was central to both *Ball* and *Rutledge.* We conclude, accordingly, that we are not bound by our decision in *Gricco.*

\* \* \* \* \* \*

Following *Ball, Rutledge*, and *Miller*, we conclude that Tann has met his burden to show that his substantial rights were affected by his unauthorized conviction and

sentence on both counts charged under § 922(g).

### D.

■ Finally, we turn to whether the District Court's error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings," and whether this Court should exercise its discretion to correct the error. *Olano*, 507 U.S. at 732, 113 S.Ct. 1770 (quotation marks and citations omitted).

The Government argues, citing *Gricco*, that a concurrent sentence and additional assessment "hardly amount[ ] to a miscarriage of justice warranting the exercise of the Court's discretion under Rule 52(b)." Gov't Br. 17. We disagree for the reasons set forth in section II(c) above.

In *Miller*, we concluded, on the basis of the Supreme Court's decisions in Ball and *Rutledge*, that an additional, unauthorized conviction—together with its concurrent sentence, additional assessment, and the potential for adverse collateral consequences—seriously affected the fairness of the district court proceedings. 527 F.3d at 73–74. Following the Supreme Court's direction, we exercised our discretion under Rule 52(b) and concluded that one of the convictions, as well as its concurrent sentence and assessment, must be vacated. *Id.* at 74 (citing *Ball*, 470 U.S. at 864, 105 S.Ct. 1668). We note that other courts of appeals have similarly exercised their discretion in circumstances analogous to those presented in *Miller* and in the present case.[10]

We hold that leaving this error uncorrected would seriously affect the fairness and integrity of these proceedings and, therefore, conclude that we will exercise our discretion to grant relief under Rule 52(b).

### III.

For the foregoing reasons, we will remand this case to the District Court with instructions to vacate the sentence on one of Tann's convictions under 18 U.S.C. § 922(g) and to merge the two convictions under § 922(g) into one conviction. In all other respects, we will affirm the judgment of the District Court.

---

10. *See, e.g., Ogba*, 526 F.3d at 237–38 (concluding that the multiplicitous conviction and sentence amounted to double jeopardy, and that "[f]ailing to remedy a clear violation of a core constitutional principle would be error so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice" (quotations and citations omitted) (alteration in original)); *Zalapa*, 509 F.3d at 1065 ("By convicting and sentencing Zalapa on both firearms counts, the district court's plain error exposed Zalapa to double jeopardy, which makes his convictions fundamentally unfair."); *Parker*, 508 F.3d at 440–41 (overruling prior precedent and concluding that multiplicitous convictions, with concurrent sentences and assessments, amounted to miscarriage of justice).