NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2153
_____

UNITED STATES OF AMERICA

v.

ANDREW LUCAS,
Appellant

_____

On Appeal from the United States District Court for the
District of New Jersey
(D.C. No. 3-14-cr-00052-001)
District Judge:  Hon. Freda L. Wolfson

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 11, 2017

Before:  CHAGARES, JORDAN, and NYGAARD, Circuit Judges.

(Filed: September 18, 2017)
_____

OPINION*
_____

---

\* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Appellant Andrew Lucas ("Lucas") appeals from the District Court's judgment of conviction. For the following reasons, we will affirm.

I.[1]

Lucas was a financial advisor doing business as Lucas Capital Advisors ("LCA"). In 2009, Lucas became interested in acquiring a piece of New Jersey farmland called Burke Farm.

On December 15, 2009, Lucas submitted an application to Central Jersey Bank, N.A. ("Central Jersey Bank") to assume responsibility for the property's mortgage. Lucas made in the application several misrepresentations relating to his personal finances and business income. He also submitted false tax and other documents for himself and his father, whom Lucas listed as a co-purchaser of the Farm and guarantor of the loan.

On February 15, 2010, Lucas solicited a $250,000 loan from an LCA client, Robert Janowski, who suffered from mental illness. Lucas told Janowski that the money would be invested in a company named VLM Investments, LLC ("VLM"), would accrue 6% annual interest, and would be secured by various VLM assets. The promissory note for the loan bore the forged signature of Thomas Littlefield, Lucas's cousin, who was unaware that Lucas had used it.

Lucas did not create VLM until February 18, 2010. Along with the company, Lucas set up various associated bank accounts and procured an employer identification

_____

[1] We write only for the parties and therefore recount only those facts necessary to our disposition.

2

number from the IRS. Unbeknownst to Littlefield, Lucas identified him in several documents as VLM's sole member and manager, and used his signature and social security number on various tax- and business-related forms.

On February 22, 2010, Janowski wired $250,000 to a bank account Lucas had established for VLM. Lucas withdrew the money from the VLM account and used it toward the Burke Farm acquisition.

The Government opened an investigation into Lucas's dealings. On February 6, 2014, a grand jury returned an eleven-count indictment charging Lucas with various crimes related to the purchase of Burke Farm. Trial commenced on September 3, 2014. On September 18, 2014, the jury found Lucas guilty on all counts. He was convicted of wire fraud, 18 U.S.C. § 1343; illegal monetary transaction, 18 U.S.C. § 1957; loan application fraud, 18 U.S.C. § 1014; making false statements to the IRS, 18 U.S.C. § 1001; aggravated identity theft, 18 U.S.C. § 1028A(a)(1); obstruction of a grand jury investigation, 18 U.S.C. § 1503; and falsification of records in a federal investigation, 18 U.S.C. § 1519. The District Court denied Lucas's subsequent motion for judgment of acquittal as to Counts One and Two (wire fraud and illegal monetary transaction). The Court sentenced Lucas to sixty months of imprisonment and three years of supervised release, and ordered Lucas to forfeit his interest in Burke Farm. Lucas timely appealed.

II.[2]

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

3

Lucas challenges the District Court's decision to exclude certain evidence and argues that his conviction must be reversed because of erroneous jury instructions, insufficiency of the evidence, prosecutorial misconduct, and an impermissible variance between the indictment and evidence presented at trial.[3]

A.

Lucas argues the District Court erred in excluding evidence showing that he repaid Janowski pursuant to the terms of his $250,000 loan.[4]  Contrary to Lucas's assertions, however, the District Court <u>did</u> allow evidence of repayment.  At one point during the trial, the court stated that it would allow the defense to ask Janowski one question about payments VLM made on the loan.  Defense counsel agreed, but rather than question Janowski, decided to enter into a stipulation with the Government which stated in relevant part that "[o]n or about March 29, 2013, . . . Lucas paid Robert Janowski $250,000."  Supplemental Appendix ("Supp. App.") 665.

---

[3] Unless otherwise noted, the issues Lucas raises on appeal were not preserved below and so we will not reverse absent plain error.  <u>See</u> <u>United States v. Tann</u>, 577 F.3d 533, 535 (3d Cir. 2009).  To establish plain error Lucas must demonstrate "an 'error' that is 'plain' and that 'affect[s] substantial rights.'"  <u>Id.</u> (alteration in original) (quoting <u>United States v. Olano</u>, 507 U.S. 725, 732 (1993)).  Even then, reversal is a matter of our "sound discretion," which we only will exercise if "the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  <u>Id.</u> (quoting <u>Olano</u>, 507 U.S. at 732).  Upon appeal of a jury conviction, we review the evidence in the light most favorable to the Government.  <u>United States v. Hoffecker</u>, 530 F.3d 137, 146 (3d Cir. 2008).

[4] The parties dispute whether Lucas adequately preserved this issue for appeal. We need not decide the appropriate standard of review, however; even if we reviewed the exclusion of repayment evidence under a less deferential abuse of discretion standard — reserved for properly preserved objections to evidentiary decisions, <u>United States v. Kolodesh</u>, 787 F.3d 224, 239 n.19 (3d Cir. 2015) — we would conclude that Lucas's claim fails largely for the reasons stated <u>infra</u>.

Lucas's contentions on appeal that he could have presented additional evidence of repayment are unavailing. "[I]f there was any error at all, it was 'invited error' and cannot now be a basis for reversal." United States v. Console, 13 F.3d 641, 660 (3d Cir. 1993) (quoting Herman v. Hess Oil V.I. Corp., 524 F.2d 767, 772 (3d Cir. 1975)) (concluding that the defendant could not challenge the trial reading of an entire transcript after objecting at trial to the reading of only excerpts). Defense counsel made a tactical decision to introduce evidence of repayment by way of the parties' stipulation. Lucas cannot now fault the District Court on the basis that the stipulation was insufficient. Cf. United States v. Lockwood, 789 F.3d 773, 779-80 (7th Cir. 2015) ("[The defendant] cannot now escape the parties' stipulation by challenging his conviction based on a lack of evidence after he conceded the fact in a stipulation."). Accordingly, this challenge fails.

B.

Lucas relatedly challenges the District Court's instructions to the jury that the defendant's "intent to defraud may be found even if [Lucas] hoped, intended, or expected that Robert Janowski would eventually be satisfied or repaid." Supp. App. 1249. In their stead, Lucas argues that the jury should have been affirmatively instructed that intent to repay is relevant to and in fact dispositive of intent to defraud. See Lucas Br. 28 (suggesting instructions that either "repayment could be considered in determining whether [Lucas] acted with the requisite intent to defraud Mr. Janowski" or "if [the jury] finds [Lucas] intended and expected that Mr. Janowski would be repaid, it may not find the requisite intent to harm him").

5

We have never held that evidence of repayment is relevant when considering a person's intent to defraud another, a proposition which has been squarely rejected by several of our sister courts. See, e.g., United States v. Treadwell, 593 F.3d 990, 997 (9th Cir. 2010); United States v. Hamilton, 499 F.3d 734, 736 (7th Cir. 2007); United States v. Curry, 461 F.3d 452, 458 (4th Cir. 2006). Lucas's reliance on United States v. Jimenez, 513 F.3d 62 (3d Cir. 2008), is misplaced. There, we held that actual repayment "coupled with other evidence that likewise negates an intent to defraud" may be relevant to the specific intent of a defendant charged in a check-kiting scheme. Id. at 75. As the Government contends, however, Jimenez is distinguishable because check kiting is a unique type of bank fraud in which the perpetrator knows that he or she will possess inadequate funds to cover checks deposited into a bank account. See United States v. Shaffer, 35 F.3d 110, 111 n.1 (3d Cir. 1994) (illustrating a typical check-kiting scheme). Here, any plan by Lucas to repay Janowski is irrelevant to the fact of whether he intended to induce Janowski to give him a loan under false pretenses, which is harm enough.[5] Cf., e.g., Treadwell, 593 F.3d at 997 ("The intent to induce one's victim to give up his or her property . . . causes 'harm' by depriving the victim of the opportunity to weigh the true benefits and risks of the transaction, regardless of whether or not the victim will suffer

---

[5] This is true regardless of why, according to Lucas, repayment evidence is relevant. Lucas contends that his intent to repay negates the specific intent to cause harm, which Lucas argues the Government must establish beyond a reasonable doubt in order to prove fraud, and supports his defense that he acted in good faith. Even assuming that repayment evidence is probative in these ways — which we do not hold — the District Court's permissive instructions that the jury may find intent notwithstanding repayment evidence were not plain error.

the permanent loss of money or property."). Accordingly, the District Court's jury instructions were not plain error.

## C.

Lucas contends there is insufficient evidence to sustain his wire fraud and illegal-transaction convictions because the Government never adduced evidence showing that Lucas's misrepresentations were material to Janowski's decision to give Lucas the loan.

Lucas is correct that to prove wire fraud, the Government must prove materiality. See Neder v. United States, 527 U.S. 1, 25 (1999). But materiality is an objective test, and requires showing that a defendant's misrepresentations would have been important to a reasonable person deciding whether to take the requested action, not that the victim actually relied on those misrepresentations. See id. at 21-23 & n.5 (recounting the common-law definition of fraud which the Court concluded Congress intended to incorporate into the wire-fraud statute); id. at 25 (stating that proving actual reliance is unnecessary to prove wire fraud). Lucas's conviction, which rested upon the jury's findings that Lucas's misrepresentations about VLM and its assets would have been important to a reasonable person when deciding to make the loan, is hardly plain error. As a result, this challenge fails.

## D.

Lucas argues that the prosecution committed misconduct when at summation it repeated testimony from Janowski indicating that he believed he was giving Lucas

$250,000 to invest in stock, rather than use as a loan.[6] Lucas contends that reversal is warranted because the Government knew this testimony to be inaccurate. See Napue v. Illinois, 360 U.S. 264, 269 (1959) ("[A] conviction . . . must fall under the Fourteenth Amendment . . . when the State, although not soliciting false evidence [at trial], allows it to go uncorrected when it appears." (citations omitted)).

At trial, Janowski repeatedly referred to the loan as an investment and stated that he thought he was purchasing stock. In its closing, the prosecution twice reminded the jury that Janowski thought the money was for investing in stock. These observations fairly restate Janowski's testimony, which is not rendered false even if evidence otherwise established that the transaction was a loan or that Janowski was told it was a loan. The prosecution had no obligation to correct any supposed misunderstanding on the part of Janowski, which, after all, was probative of whether Janowski was confused about the nature of the investment and was misled by Lucas. Lucas fails to demonstrate plain error on his prosecutorial misconduct claim.

E.

Lucas finally argues that his loan-application fraud conviction must be set aside because of impermissible variations between the charge in the indictment and the evidence adduced at trial. Specifically, Lucas contends that he was charged with (and convicted of) committing fraud when applying for a loan when in fact he was merely assuming control of an already-existing loan.

---

[6] Lucas withdrew a second prosecutorial misconduct claim in response to an argument made in the Government's brief. Lucas Reply Br. 15 n.4.

8

We have recognized that "[t]here are two types of [impermissible] variations between the charges in an indictment and the evidence at trial:  (1) amendments of the indictment when its charging terms are altered [called constructive amendments]; and (2) variances, where the charging terms of the indictment are not changed but when the evidence at the trial proves facts materially different from those alleged in the indictment."  United States v. Daraio, 445 F.3d 253, 259 (3d Cir. 2006).  Lucas advances both theories, neither of which has merit.

The indictment charged Lucas with making a series of false statements on a loan application to Central Jersey Bank, after which the bank "funded a . . . loan to [Lucas] . . . [i]n connection with" Lucas's purchase of the company which had previously owned Burke Farm.  See Appendix ("App.") 22-24.  Through this application, Lucas "knowingly made false statements and reports for the purpose of influencing in some way the action of [the bank], in connection with an application for a loan to purchase . . . Burke Farm," in violation of 18 U.S.C. § 1014.  App. 24-25.  The jury convicted Lucas on these facts.

According to Lucas, he did not "apply for a loan" but "paid the bank money to cause it to reduce the existing loan's principal and release [the former borrowers] from their own personal liability."  Lucas Br. 36.  Even granting that characterization of the transaction,[7] Lucas's claim fails because being convicted for applying for a new loan, as

---

[7] We are skeptical that there exists any material difference between asking a bank to loan a person money in the first instance and asking a bank to allow the person to assume responsibility for a loan in place of the original borrowers.  See Lucas Br. 38 ("[Lucas] did not seek a loan; he intended to pay one down.  The erroneously charged facts . . . neutered Mr. Lucas' ability to defend against the loan application fraud charge by showing he had not been trying to influence the bank to lend him money." (citation

9

opposed to assuming control of an existing loan, did not "broaden[] the possible bases for conviction from that which appeared in the indictment" or "modify 'the elements of the crime charged.'" United States v. Vosburgh, 602 F.3d 512, 532, 534 (3d Cir. 2010) (quoting United States v. McKee, 506 F.3d 225, 229 (3d Cir. 2007) and United States v. Castro, 776 F.2d 1118, 1122 (3d Cir. 1985)). Lucas was found guilty of lying on an application to a bank in connection with a loan related to the purchase of Burke Farm, the precise conduct charged in the indictment and required for conviction under 18 U.S.C. § 1014. There was no constructive amendment. Cf. Vosburgh, 602 F.3d at 533-34 (holding that there was no constructive amendment where the defendant was charged with possession of thumbnails of images depicting child pornography but instead convicted of possessing the full-sized images).

Similarly, there was no impermissible variance. "Unlike a constructive amendment, a variance can result in a reversible error only if it is likely to have surprised or otherwise has prejudiced the defense." Daraio, 445 F.3d at 262. A defendant will not prevail on a variance claim where "the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, [or] . . . if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense." Id. (quoting United States v. Schoenhut, 576 F.2d 1010, 1021-22 (3d Cir. 1978)) (alteration in the original).

_____

omitted)). Even assuming such a difference, however, we conclude that Lucas's claims fail.

10

Even if the trial evidence did vary from the charges in the indictment, Lucas advances no argument that he is at risk of double jeopardy and only cursorily claims that evidence related to his loan application made "his defense . . . appear off target." Lucas Br. 39. Because Lucas fails to explain how he was "surprised" by the prosecution's argument that he lied on a loan application in connection with the Burke Farm purchase — again, the conduct with which he was charged — his claim fails.[8]

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[8] We have considered Lucas's remaining arguments and conclude that they are without merit.