**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1681
_____

UNITED STATES OF AMERICA

v.

LEROY BROOKS,

Appellant
_____

On Appeal from the United States District Court for the
District of New Jersey
(No. 1:14-cr-00382-002)
District Judge: Honorable Renee M. Bumb
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 19, 2018

Before:  AMBRO, RESTREPO, and FUENTES, <u>Circuit Judges</u>

(Opinion filed: May 17, 2018)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

FUENTES, Circuit Judge

Leroy Brooks appeals his conviction and sentence arising out of a reverse sting operation organized by the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "Bureau"). We affirm in part, vacate in part, and remand.

**I.**

Because the facts are well-known to the parties, we discuss only those facts necessary to our disposition.

In 2013, the Bureau began investigating Alexander Morales for drug distribution and firearms offenses. As part of that investigation, the Bureau used two undercover agents, Steve Ingram and Stacy Brown, to arrange a sting involving a proposed home invasion. In this regard, Ingram—who previously bought heroin from Morales—approached Morales about robbing a drug stash house. Morales expressed interest in Ingram's proposal. Ingram then arranged a meeting between himself, Morales, and Brown. At the meeting, Brown told Morales that he was a drug courier and needed assistance robbing fifteen kilograms of cocaine from a stash house run by a Mexican cartel. In reality, neither the stash house nor the cocaine existed.

Morales then recruited two other individuals—Brooks and Eladio Santana—to participate in the stash house robbery. On the day of the planned robbery, Ingram drove Morales, Brooks, and Santana to a storage facility in Maple Shade, New Jersey. Before getting into Ingram's car, Brooks—who was already wearing black gloves—placed a canvas bag inside a hidden compartment in the backseat. On the way to the storage facility, Brooks asked a number of questions about the men guarding the stash house.

2

After Brown greeted the crew at the storage facility, Brooks asked additional questions about the robbery. Subsequently, Morales, Brooks, and Santana were arrested. An evidence collection team then searched the bag that Brooks placed in Ingram's car. The bag contained a black mask, a black ski mask, a black wool hat, a loaded revolver, and two loaded semi-automatic weapons.[1]

Brooks was later charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and carrying firearms during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

In his pretrial motions, Brooks, an African-American, moved to dismiss for selective enforcement and sought discovery regarding the Bureau's stash-house sting operation, which he alleged to be racially motivated. The District Court denied the motion, concluding that Brooks failed to meet the requirements for obtaining discovery under *United States v. Armstrong*.[2] Brooks also moved to dismiss for outrageous government conduct and lack of jurisdiction over the conspiracy to commit Hobbs Act robbery charge. The District Court denied these motions as well.

---

[1] At Brooks' trial, Morales testified that the two semi-automatic weapons belonged to Brooks and the revolver belonged to Santana.

[2] 517 U.S. 456 (1996).

Before trial, the Government also submitted "Joint Requests to Charge" to the District Court. In relevant part, Request No. 49 provided that conspiracy to commit Hobbs Act robbery is a crime of violence under § 924(c).

In January 2016, Brooks was tried by jury. At the charge conference, the District Court reviewed the "Joint Requests to Charge" with the parties "page by page."[3] When the District Court reached Request No. 49, Brooks did not object to the jointly proposed instruction on the basis that conspiracy to commit Hobbs Act robbery is not a crime of violence. Brooks also did not make that objection when the District Court discussed the § 924(c) jury instructions the next day. Thereafter, the District Court instructed the jury that conspiracy to commit Hobbs Act robbery is a crime of violence. Following the charge, there were no "exceptions to the charge as read."[4]

The jury convicted Brooks on all counts. Brooks then filed a post-trial motion arguing, *inter alia*, that the District Court erred in instructing the jury that conspiracy to commit Hobbs Act robbery is a crime of violence under § 924(c). The District Court denied the post-trial motion.

At sentencing, the District Court found that Brooks was a career offender under U.S.S.G. § 4B1.1. Because Brooks qualified as a career offender, his offense level automatically became 37. Thus, Brooks faced an advisory Guidelines range of 360 months to life, plus a mandatory consecutive sentence of 60 months for the § 924(c) offense. The

---

[3] A706.

[4] A816.

District Court also denied Brooks' request for a two-level minor-role reduction. Ultimately, the District Court applied a five-level downward variance and sentenced Brooks to 270 months' imprisonment. This appeal followed.[5]

**II.**

Brooks raises five issues. First, he argues that the District Court erred in declining to dismiss for outrageous government conduct. Second, he claims that the District Court erred in not dismissing the conspiracy to commit Hobbs Act robbery charge for lack of jurisdiction. Third, he contends that the District Court erred in not applying a two-level minor-role adjustment at sentencing. Fourth, he asserts that the District Court erred in instructing the jury that conspiracy to commit Hobbs Act robbery is a crime of violence under § 924(c). Finally, he maintains that the District Court erred in denying his motion for discovery on his selective enforcement claim. We address each issue in turn.

**A.**

Brooks argues that his indictment should have been dismissed because the stash-house sting constituted outrageous government conduct that violated his due process rights.[6] We disagree. "[D]ismissal under this circumstance is rare, occurring only where the government's conduct is shocking, outrageous, and clearly intolerable."[7] This appeal—

---

[5] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[6] In assessing an outrageous government conduct claim, "we review the District Court's factual findings for clear error and exercise plenary review over the Court's legal conclusions." *United States v. Christie*, 624 F.3d 558, 572 (3d Cir. 2010).

[7] *United States v. Dennis*, 826 F.3d 683, 695 (3d Cir. 2016) (citation and quotation marks omitted).

in which Morales, not the Bureau, invited Brooks into the scheme—does not satisfy this "exceedingly great" evidentiary burden.[8]  As such, this claim fails.

However, in so holding, we reiterate to the Government that "we have expressed misgivings in the past about the wisdom and viability of reverse stash house stings," and the fact "[t]hat this case fell on the safe side of the due process divide should not be taken to indicate that all such prosecutions will share the same fate."[9]

**B.**

Brooks also asserts that the District Court erred in declining to dismiss the conspiracy to commit Hobbs Act robbery charge because there was insufficient evidence that the fictitious stash house robbery would have affected interstate commerce.[10]  This argument is unavailing.  It is settled that the Hobbs Act covers inchoate crimes that, if successful, would have affected interstate commerce.[11]

In response, Brooks cites the Supreme Court's recent decision in *National Federation of Independent Business v. Sebelius*[12] to argue that the Government "lacks

---

[8] *Id.*

[9] *United States v. Washington*, 869 F.3d 193, 213 (3d Cir. 2017); *see also Dennis*, 826 F.3d at 698 (Ambro, J., concurring in part and dissenting in part on other grounds) (observing that "the Government has been tiptoeing near the line" of outrageousness in reverse stash-house sting operations).

[10] We exercise plenary review over the District Court's assertion of federal jurisdiction. *United States v. Singletary*, 268 F.3d 196, 198 (3d Cir. 2001).

[11] *See United States v. Jannotti*, 673 F.2d 578, 592 (3d Cir. 1982) ("[D]efendants agreed to do acts which, had they been attainable, would have affected commerce.  At that point, regardless of whether an actual effect on commerce was 'reasonably probable,' a sufficient federal interest was implicated to support federal jurisdiction over that agreement.").

[12] 567 U.S. 519 (2012).

power to create conspiracies that would have never occurred in the absence of federal intervention."[13] However, *Sebelius* merely addressed Congress' authority to compel commercial activity, not its ability to proscribe planned criminal activity.[14] As such, Brooks' reliance on *Sebelius* is misplaced.

## C.

Brooks next maintains that the District Court erred at sentencing in declining to apply a two-level minor-role adjustment under U.S.S.G. § 3B1.2(b), which would have reduced his offense level from 32 to 30. However, Brooks is a career offender. Consequently, even if the District Court had applied the two-level minor-role reduction, his offense level would still be 37.[15] This argument is therefore moot.

## D.

Relying on *Johnson v. United States*,[16] Brooks further contends that the District Court erroneously instructed the jury that conspiracy to commit Hobbs Act robbery is a crime of violence. Nevertheless, Brooks waived this claim by jointly proposing—well after *Johnson* issued—the very jury instruction he now challenges.[17]

---

[13] Appellant's Br. at 35.

[14] *See Sebelius*, 567 U.S. at 547–58 (holding that Congress lacked authority to enact the Affordable Care Act's individual mandate under the Commerce Clause).

[15] *See* U.S.S.G. § 4B1.1(b) ("[I]f the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply.").

[16] 135 S. Ct. 2551 (2015).

[17] *See United States v. Ozcelik*, 527 F.3d 88, 97 n.6 (3d Cir. 2008) ("Because [the defendant] made a joint request in favor of the very instructions he now challenges, he

**E.**

Finally, Brooks argues that the District Court erred in applying *Armstrong* to his motion for discovery regarding the stash-house sting program. Because Brooks did not preserve this issue, we review the District Court's discovery order for plain error.[18] To find plain error, we must hold that "(1) there is an error; (2) the error is plain; and (3) the error affects substantial rights."[19] "If these conditions are met, we will exercise our discretion to correct the error if it seriously affects the fairness, integrity or public reputation of judicial proceedings."[20]

The Government concedes that, in light of *United States v. Washington*,[21] the District Court clearly erred in evaluating Brooks' discovery motion under *Armstrong*. Nevertheless, the Government asserts that this error did not affect Brooks' substantial rights because he cannot establish that the discovery he sought would have supported a viable selective enforcement claim. This argument misses the point. "[T]o have affected a defendant's substantial rights, a plain error must have caused the defendant prejudice, in

---

waived his right to raise these instructional issues on appeal under the invited error doctrine.").

[18] *United States v. Pawlowski*, 682 F.3d 205, 210 (3d Cir. 2012).

[19] *United States v. Dahl*, 833 F.3d 345, 357 (3d Cir. 2016).

[20] *United States v. Azcona-Polanco*, 865 F.3d 148, 151 (3d Cir. 2017) (citation and quotation marks omitted).

[21] 869 F.3d at 220 ("[M]otions for discovery seeking information on putative claims of unconstitutional selective enforcement are not governed by strict application of the *Armstrong/Bass* framework.").

that it affected the outcome of the district court proceedings."[22] Here, because the District Court relied on *Armstrong* in denying discovery, that error necessarily "affected the outcome of the district court proceedings."[23] Indeed, there is no way of knowing if the District Court would have granted discovery under the standard articulated in *Washington*.[24] Thus, clear error affected Brooks' substantial rights.

In light of Brooks' allegations of racial bias in the Bureau's stash-house sting program, we exercise our discretion to vacate the District Court's discovery order and remand for limited post-judgment proceedings consistent with *Washington*. In so doing, "[w]e emphasize that we are not directing the District Court to grant discovery."[25] "Rather, we commit the inquiry to the District Court's considerable discretion."[26]

### III.

For the foregoing reasons, we affirm the judgment of conviction and sentence, vacate the discovery order, and remand for further proceedings.

---

[22] *United States v. Tann*, 577 F.3d 533, 538 (3d Cir. 2009) (citation and quotation marks omitted).

[23] *Id.*

[24] *See Washington*, 869 F.3d at 221 (holding that, in ruling on a pretrial discovery request that alleges selective enforcement, "a district court retains the discretion to conduct a limited pretrial inquiry into the challenged law-enforcement practice on a proffer that shows 'some evidence' of discriminatory effect").

[25] *Id.* at 222.

[26] *Id.* What's more, as in *Washington*, "[t]he judgment of conviction and sentence are otherwise unaffected by this remand." *Id.* at 198.