NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-2767, 11-4032 & 13-1084
_____

UNITED STATES OF AMERICA

v.

RICHARD CORBIN
a/k/a ASHEED
a/k/a SHEED
a/k/a RICHARD RASHEED CORBIN

Richard Corbin,
            Appellant  (Nos. 11-2767 & 13-1084)
_____

UNITED STATES OF AMERICA

v.

JOHNNIE CORLEY,
a/k/a
BLACK,
a/k/a
C,
a/k/a
CURLEY

Johnnie Corley,
            Appellant  (No. 11-4032)
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action Nos. 2-10-cr-00352-002/3)
District Judge: Honorable Michael M. Baylson
_____

Before: AMBRO, SCIRICA, and ROTH, <u>Circuit Judges</u>

(Opinion filed: April 21, 2015)

_____

OPINION[*]

_____

AMBRO, <u>Circuit Judge</u>

Appellants Richard "Rasheed" Corbin and Johnnie Corley were the ringleaders of a group of armed robbers who targeted pharmacies as their victims. The group's aim was to steal drugs that were sought on the "street." Corbin and Corley were charged with, among other things, conspiracy to commit robbery that interferes with interstate commerce, 18 U.S.C. § 1951(a), robbery that interferes with interstate commerce, 18 U.S.C. § 1951(a) ("Hobbs Act robbery"), and using and carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c).

Before their joint trial, the District Court granted the Government's motion to dismiss one of the § 924(c) counts on which Corbin was indicted. The jury convicted him and Corley on all other charges (except for one of the § 924 counts against Corley). A few days after the jury returned its verdict, they were sentenced. Applying the statutory mandatory minimums that trigger when there are successive § 924(c) violations,

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

the District Court sentenced Corley to 964 months' imprisonment and Corbin to 1,284 months. They appeal.[1]

## I.

On appeal, Corbin and Corley take a kitchen-sink approach, listing over 15 perceived errors aimed at setting aside their convictions and sentences. We have considered all their arguments, but address in detail only the more meritorious ones. They are that: (1) Corbin and Corley's speedy trial rights were violated; (2) the District Court abused its discretion in admitting certain bad acts evidence; and (3) it erred in imposing their respective sentences.

## A.

Corbin and Corley argue for the first time on appeal that their rights under the Speedy Trial Act, 18 U.S.C. § 3161(b), were violated. They invoke the so-called "ruse exception" to the Speedy Trial Act and contend that, because there was over a 30-day delay from the time they were arrested by state law enforcement officers until they were indicted on federal charges, their speedy trial rights were violated. Because the District Court did not have the opportunity to take the first pass at addressing this argument, it is waived. *See United States v. Cherry*, 720 F.3d 161, 166 (4th Cir. 2013) (observing that, of the Circuits to have addressed the question, they are uniformly of the view that "a defendant who does not file a speedy indictment motion before trial waives his right to raise that issue").

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Corbin (but not Corley) also contends that his constitutional right to a speedy trial was violated. This argument fares no better than his statutory one. Only if the period of delay is "presumptively prejudicial" do we apply the *Barker v. Wingo* balancing test to determine if a violation of a defendant's Sixth Amendment speedy trial rights occurred. *See United States v. Dent*, 149 F.3d 180, 184 (3d Cir. 1998) (citing *Barker v. Wingo*, 407 U.S. 514, 533 (1972)). Under that four-factor test we consider: (1) the length of the delay; (2) the reason for it; (3) the defendant's assertion of his speedy trial right; and (4) any prejudice to the defendant. Even assuming that the period of delay Corbin complains about was "presumptively prejudicial," his argument still falls flat. The second, third, and fourth factors weigh decidedly against a finding of a speedy trial violation.

The principal cause for the length of delay (11 months) was not the Government's dragging of its feet but Corley's continuance requests and the numerous pretrial motions on which hearings were held. As to the third factor, Corbin did not assert his speedy trial rights. Quite the contrary. In a document filed on February 24, 2011, he complained about the Magistrate's rejection of his request for a 120-day continuance. Finally, Corbin has made no showing of prejudice from the delay.

**B.**

Corbin and Corley next fault the District Court for admitting evidence under Federal Rule of Evidence 404(b) that the pair had previously conspired to rob drug dealers at gunpoint. They contend the evidence shows only their propensity to commit robberies. Not so. As a general matter, "the Government has broad latitude to use 'other acts' evidence to prove a conspiracy." *United States v. Cross*, 308 F.3d 308, 324 (3d Cir.

4

2002) (citation omitted). It often uses this evidence to show how a group of defendants formed their illicit relationship and the degree to which they were familiar with each other. *See, e.g.*, *United States v. Traitz*, 871 F.2d 368, 389 (3d Cir. 1989) (admitting Rule 404(b) evidence where "the evidence of [] violence goes to a 'shared tradition' of violence and toward showing a 'symbiotic relationship'").

That happened here. Evidence of Corbin and Corley's prior conspiracy provided important background for the jury: how their criminal enterprise began and developed. *See Cross*, 308 F.3d at 324 (noting that "Rule 404(b) evidence is especially probative when the charged offense involves a conspiracy") (citations omitted). While it may have tainted their character to some extent, any prejudicial effect was, on balance, not as important as the inferential value of the evidence regarding the formation of their conspiratorial relationship.

Corbin advances an additional Rule 404(b) argument. He contends that the District Court abused its discretion in permitting his former girlfriend and Government witness, Sharon Stevenson, to testify that he had physically abused her. But this was only part of the story. Stevenson's real value as a Government witness was her first-hand account of observing Corbin with large quantities of pills, guns, and cash, her testimony regarding Corbin's admission to robbing pharmacies and her role within Corbin's criminal enterprise, and her admission to giving false grand jury testimony out of fear of reprisal.

We review Stevenson's testimony against this background. Principally, it made her appear more credible and explained why she succumbed to Corbin's demands. It

rebuffed Corbin's attempt to paint her as a criminal trying to cut a favorable deal with prosecutors and shed light on why Corbin felt comfortable discussing his criminal activity with her.  Moreover, it explained why Stevenson went to great lengths to help Corbin carry out his criminal acts.  "[E]vidence concerning a witness's credibility is always relevant, because credibility is always at issue[.]"  *United States v. Green*, 617 F.3d 233, 251 (3d Cir. 2010) (citation omitted).  This was all the more true here, as Corbin launched a vigorous attack against Stevenson's credibility on cross-examination.  Thus, as with the other 404(b) evidence Corbin complains about, the predominant purpose of Stevenson's testimony about the physical abuse she endured was not to smear Corbin's character but to provide context for her other testimony and make her appear more credible.

## C.

Corbin and Corley also attack their sentences.  First, Corley contends that the District Court erred in sentencing him only four days after the jury returned its guilty verdict and without the benefit of a presentence investigation report (often referred to as a "PSR").  As a general matter, Corley is right—a district court should not impose a sentence without consulting a PSR.  But the general rule doesn't apply here.  Corley was convicted of four violations of § 924(c) and faced 82 years of mandatory imprisonment.  Because the Court had no discretion to impose a lower sentence (only a higher one), the information contained in his PSR could have only hurt Corley.

Second, Corbin and Corley both contend that the District Court improperly imposed 25-year sentences on the successive § 924(c) convictions because they were all

contained in the same judgment. *See* 18 U.S.C. § 924(c)(1)(C)(i) ("In the case of a second or subsequent conviction under this subsection, the person shall be sentenced to a term of imprisonment of not less than 25 years."). It makes no difference that the § 924 convictions were contained in the same judgment. *See Deal v. United States*, 508 U.S. 129 (1993).

Third, Corbin and Corley contend that the District Court erred in imposing its sentence in connection with the § 924(c) counts because the jury didn't find that the "brandishing" element had been satisfied or that the multiple § 924(c) violations were "successive." Because this is the first time these arguments are raised, we review them for plain error—that is, we look to whether there was "an (1) error; (2) that is plain; (3) that affects substantial rights; and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Tai*, 750 F.3d 309, 314 (3d Cir. 2014) (citing *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)).

Corbin and Corley rely principally on *Alleyne v. United States*, 133 S. Ct. 2151 (2013), in contending that "[f]acts that increase [a] mandatory minimum sentence are [] elements and must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 2158. Because the underlying trial took place before *Alleyne*—and while it was still good law for a court to determine whether the fact of "brandishing" was established—the District Court, rather than the jury, made the factual determination that Corbin and Corley brandished a firearm when robbing the various pharmacies.

To be sure, there is no *Alleyne* problem regarding the successive mandatory minimum sentences because the only additional fact requiring the imposition of the

7

mandatory minimum term—that each § 924(c) count is successive to the one before it—is inherent in the jury's verdict. Thus, the only question before us is whether the District Court plainly erred in finding that Corbin and Corley brandished firearms, which increased their minimum penalty for the initial § 924(c) violation from five to seven years.

It did not. The first robbery charge that resulted in a § 924(c) conviction (and thus the one seven-year term that Corbin and Corley each received) related to their July 23, 2009 robbery of the Pepper Pharmacy. At trial, the only fact in dispute was whether they were the armed robbers, and the evidence against them was overwhelming. As they were armed, the absence of jury factfinding as to the "brandishing" element did not affect the outcome of the proceedings.[2]

*    *    *    *    *

For these reasons, we affirm.

---

[2] Corbin and Corley raise numerous other arguments, but they are so clearly unpersuasive that we need not address them. They include: (1) Corbin's argument that the Government was required to charge him under 18 U.S.C. § 2118; (2) Corbin and Corley's sufficiency-of-the-evidence claims; (3) Corbin's argument regarding alleged discovery violations; (4) Corbin's argument that the District Court violated his rights under the Sixth Amendment's Confrontation and Compulsory Process Clauses; (5) Corbin's argument that the District Court abandoned its neutral role and improperly inserted itself into the cross-examination of Nicole Perry; (6) Corbin's argument that the District Court erred in admitting evidence of cooperating witnesses' plea agreements; (7) Corbin's argument that the Court abused its discretion in sustaining objections during the testimony of Agent Majarowitz; (8) Corbin's argument that he was subjected to double jeopardy; (9) Corbin's challenges to the grand jury proceedings; (10); Corbin's argument that the trial proceedings caused a variance; (11) Corbin's claims relating to the Government's introduction of evidence regarding his cell phone usage at or near the time of the robberies; and (12) Corbin's attack on the jury instructions.