**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-4628
_____

UNITED STATES OF AMERICA,

v.

THOMAS DAVID STEINER,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 2-11-cr-00089-001)
District Judge: Honorable Joy Flowers Conti

_____

On Remand from the Supreme Court of the United States
November 28, 2016

Submitted on Appellant's Motion to Summarily Remand and
Parties' Supplemental Submissions
December 30, 2016

(Originally Argued: November 6, 2015)

Before: FUENTES,[*] JORDAN, and VANASKIE, *Circuit Judges*

(Opinion on Remand Filed: February 1, 2017)
_____

W. Penn Hackney
Renee Pietropaolo     [Argued November 6, 2015]
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222

*Counsel for Appellant Thomas David Steiner*

Rebecca R. Haywood
Jane M. Dattilo     [Argued November 6, 2015]
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

*Counsel for Appellee United States of America*

_____

OPINION OF THE COURT

_____

_____

[*] Honorable Julio M. Fuentes assumed senior status on July 18, 2016.

FUENTES, *Circuit Judge*.

This case returns to us on a "grant, vacate, and remand" ("GVR") order of the Supreme Court of the United States. Our earlier precedential opinion and judgment of March 3, 2016 had affirmed defendant-appellant Steiner's conviction for possession of ammunition by a convicted felon (18 U.S.C. § 922(g)(1)).[1] We did not reach challenges to Steiner's sentence, as he had not raised any.

The Supreme Court's GVR order[2] instructs us to reconsider our decision in light of *Mathis v. United States*,[3] the Court's latest case about predicate offenses and the "categorical approach." We asked the parties to file short supplemental statements addressing both the impact of *Mathis* on our previous opinion and the merits of Steiner's *Mathis* challenge more generally; Steiner also separately moved to remand for expedited resentencing. Both Steiner and the government agree that *Mathis* did not affect the validity of our earlier decision affirming Steiner's conviction. They also agree that it *does* affect Steiner's sentence; the District Court used a 1993 Pennsylvania burglary conviction as a predicate "crime of violence" under the United States Sentencing Guidelines, which the government now concedes was plain error.

---

[1] *See generally United States v. Steiner*, 815 F.3d 128 (3d Cir. 2016).

[2] *See Steiner v. United States*, 137 S. Ct. 494 (2016).

[3] 136 S. Ct. 2243 (2016).

Because we agree with the parties that, under *Mathis*, Steiner's 1993 burglary conviction was not a predicate "crime of violence" under the Guidelines—and, thus, that his Guidelines range should not have been enhanced—we will grant Steiner's motion for summary action, vacate the District Court's judgment of sentence, and remand for expedited resentencing. Steiner is to be released from federal custody pending resentencing, subject to the supervised release terms contained in the District Court's judgment of sentence. And because our previous precedential opinion was not at all affected by *Mathis*, we will once again affirm Steiner's conviction. We therefore revise and reissue below our previous precedential opinion as altered by our *Mathis* discussion and the alternative disposition it requires.

## I.    BACKGROUND[4]

### A.    INTRODUCTION

During the execution of two separate search warrants at properties that police believed were owned or occupied by defendant Thomas Steiner, police seized, among other things, a sawed-off shotgun, .32 and .38 caliber ammunition, and 12 gauge shotgun ammunition. As a result, Steiner was indicted on two counts for being a felon-in-possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). Following a 4-day trial, he was convicted on one count of felony-

---

[4] Subject matter jurisdiction was conferred upon the District Court by 18 U.S.C. § 3231. We exercise appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

4

possession of ammunition and sentenced to an 87-month prison term.

During the trial, the government introduced into evidence the fact that a warrant had issued for Steiner's arrest on an unrelated charge. Steiner contends that the District Court improperly admitted evidence of the arrest warrant that was unrelated to the offenses he faced at trial. He also argues that the District Court erred by failing to instruct the jury that it was required to reach a unanimous verdict as to each type of ammunition seized. While we conclude that the admission of the unrelated arrest warrant was error, the error was harmless. We also conclude that the District Court did not err when it declined to provide a unanimity instruction. For the reasons that follow, we will affirm the conviction. As intervening Supreme Court precedent has affected the validity of Steiner's 87-month sentence—an error that the government concedes is worthy of remand—we will vacate the judgment of sentence and remand for expedited resentencing.

## B.    STING OPERATION, SEARCH, AND INDICTMENT

This case arises from a sting operation. In August 2007, police informant Timothy Stants told Pennsylvania State Trooper Thomas Baumgard that Thomas Steiner, a convicted felon, was staying on his (Stants') property and was "on the run" from law enforcement. Stants also claimed that Steiner had a sawed-off shotgun, which Steiner had described to him as a "cop killer," and that Steiner said he would use the gun to avoid being arrested. Stants claimed that the shotgun would be found in a camper on Stants' property.

Based on Stants' tip, Baumgard obtained a search warrant for the camper. Before executing the warrant on

5

August 27, 2007, Baumgard paid Stants $100 for his help in securing Steiner's arrest and told Stants to drive Steiner to a nearby gas station. There, officers would be waiting to arrest Steiner on a warrant that had issued for Steiner's arrest for failure to appear at a preliminary hearing scheduled that same day, on an unrelated sexual assault charge. Baumgard conducted his search of the camper in the afternoon, just after Stants drove Steiner away to the gas station. He found, among other things, a sawed-off shotgun loaded with six rounds of 12-gauge shotgun ammunition; a wallet containing various documents, all bearing Steiner's name; and a discharged shotgun shell. Soon after the search, Baumgard ordered Steiner arrested on the warrant issued for his failure to appear at the preliminary hearing earlier that day. At the time of his arrest, Steiner was in Stants' car at a nearby gas station.

Apparently, there was more to the story than the gun and ammunition found in the camper. Stants also told police that he had seen the missing pieces of the sawed-off shotgun (part of the barrel and stock) at a home that Steiner supposedly owned, located at Meadow Avenue (the "home" or the "Meadow Avenue home"). Based on Stants' tip, police obtained another search warrant, this time for the home.

Police executed the search warrant for the home on August 29, 2007. When they arrived, they entered the basement of the home, which was in disarray.[5] There, they found a shotgun stock on the bar and a shotgun barrel in the

---

[5] The basement was also referred to in the indictment and at other points during trial as the "downstairs area."

6

ceiling where a tile was missing.[6] Also, they discovered a hacksaw and pipe wrenches on the basement floor and a single 12-gauge shotgun shell in a pocket of the pool table. Four other 12-gauge shotgun shells were found in a bowl, on top of which was Steiner's notice of impending warrant of arrest. In addition to the shotgun ammunition, the police also discovered a variety of other types of ammunition, including 20 rounds of .32 caliber ammunition and 17 rounds of .38 Special ammunition.

Based on the shotgun and ammunition found in the camper, a grand jury charged Steiner with one count of being a felon-in-possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). A superseding indictment was filed several months later, adding a second count charging Steiner with a violation of § 922(g) based on the ammunition found in the home.

## C. THE TRIAL

### 1. Testimony

The government's case against Steiner proceeded to a jury trial.[7] At trial, Steiner stipulated to having a prior felony

---

[6] A forensic expert later matched the stock and barrel found in the basement to the sawed-off shotgun found in the camper.

[7] The government proceeded against Steiner on a theory of constructive possession of the firearm in the camper and the ammunition found in his home. Constructive possession occurs when a person not in actual possession "knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through

conviction. He testified in his own defense and denied that he ever owned or possessed the shotgun or ammunition seized from either the camper or the basement of the home. Steiner also acknowledged that he owned the wallet found in the camper and admitted that he owned the Meadow Avenue home at some point in 2007.

Steiner's ex-wife, Greta Steiner, was called as a witness. She testified that although she had been living at a different address in 2007, she occasionally stopped at the Meadow Avenue home to retrieve her belongings. She also testified that during these visits she saw neither firearms nor ammunition in the home but she recalled having stored boxes of antique ammunition that belonged to her deceased ex-husband in the home's garage. She denied that anyone ever brought the ammunition into the home and claimed that Steiner was unaware of the ammunition. Neither Steiner nor the government presented evidence about whether the ammunition stored in the garage may have been moved to the basement.

Mark Williams, Stants' close friend, testified for the government. Williams claimed that he had been inside Steiner's home in August 2007 because he was interested in purchasing the property.[8] At that time, Williams said that he noticed the shotgun barrel and the hacksaw laying on a homemade bar and pointed them out to Stants. Williams also

---

another person or persons." *United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999) (emphasis omitted).

[8] Stants and Williams further testified that Steiner sold the house before police searched it, and Williams claimed that his wife had notarized the paperwork for that sale.

claimed that Steiner told him that he "wouldn't go easy" if the police tried to arrest him.

Stants also testified. He denied receiving any benefit for his help in securing Steiner's arrest, despite Baumgard's testimony that he had paid Stants $100 for his assistance. He also corroborated Williams' testimony regarding the basement of the home and admitted that he had visited Steiner's home twice in Steiner's absence.

### 2. The Government's Arrest Warrant Evidence

During Steiner's trial, the government introduced the arrest warrant that had issued based upon Steiner's failure to appear on the sexual assault charge. The government argued that the arrest warrant,[9] though not the underlying conduct, was admissible to show that Steiner "was on the run from law enforcement at the time, hiding out in this trailer," and was intending to "evade the warrant and not appear" at the preliminary hearing because "[t]hat's what led officers to his trailer in the first place."[10] The government claimed that the arrest warrant "complete[d] the story" because it was "background of what led law enforcement to Mr. Steiner to begin with in this case."[11] However, this was not true. Stants' tip regarding the shotgun was the actual source of the

---

[9] Our references to the unrelated arrest warrant are also, by extension, to any testimony or other evidence related to that warrant.

[10] (App. at 116.)

[11] (App. at 116.)

9

government's initial interest in Steiner. The District Court, relying on the government's representation, admitted the arrest warrant evidence as "background" under Federal Rule of Evidence 404(b). The court reasoned that, as long as the underlying conduct was not admitted, any prejudice to Steiner was minimized. The court, though, expressly rejected any argument that the evidence could be admitted to prove Steiner's motive or intent under Rule 404(b).

### 3. The District Court's Jury Instruction on Unanimity

The government requested that the jury be instructed that although the defendant was charged with possessing ammunition in different varieties or from different locations, it need not unanimously agree on which ammunition he possessed to convict him of felony possession under § 922(g). Steiner objected and requested that the jury be instructed that it must agree as to which ammunition Steiner possessed, adding that the indictment was confusing. The District Court adopted the government's position and instructed the jury that unanimity was not required with respect to the firearm or ammunition. Specifically, the court stated:

> Although all jurors must agree with respect to Count 1 that the Defendant possessed a firearm or ammunition and with respect to Count 2 that the Defendant possessed different ammunition, you need not all agree on the exact item possessed. For example, if a Defendant was charged with possessing one piece of ammunition found in the bedroom, one piece of ammunition found in the living room, and one piece of ammunition found in the basement, you

10

must all unanimously agree that the Defendant possessed at least one piece of ammunition in order to convict. You do not have to agree on which one or if he possessed more than one.

Therefore, it would be sufficient if ten jurors determined that he possessed one piece of ammunition in the bedroom, one juror determined that he possessed one piece of ammunition found in the basement, and one juror determined that he possessed them all. In other words, if the Defendant is alleged to have been in possession of ammunition of different varieties or from different locations, you must all find that as to the ammunition charged in each count he possessed at least some ammunition as charged in that count in order to convict, but . . . need not all agree with respect to a count on exactly which ammunition was actually possessed as charged in that count.[12]

The jury found Steiner not guilty on Count One (charging possession of the gun and ammunition in the camper), but guilty on Count Two (charging possession of the ammunition found in the Meadow Avenue home).

## II. CHALLENGES TO STEINER'S CONVICTION

### A. Admission of the Arrest Warrant

First, Steiner argues that the District Court erred by admitting evidence of the arrest warrant that had issued for

---

[12] (App. at 342, 487-88.)

his failure to appear at a preliminary hearing on an unrelated charge. The District Court stated during the *in limine* hearing on the admissibility of the arrest warrant, and memorialized in its minute entry, that its decision rested on Rule 404(b) grounds.[13] Based on the government's representations, the court admitted the evidence as "background" or to "complete the story" of the felon-in-possession crime.

Steiner argues that, while courts in this Circuit have occasionally admitted prior-act evidence under Rule 404(b) for the purpose of "completing the story" or providing "background," they have also generally limited the use of those purposes to conspiracy cases. In response, the government asserts that the arrest warrant was properly admitted under Rule 404(b) because it identified a proper purpose for the evidence: it was necessary to provide background and complete the story of Steiner's arrest, interrogation, and the police investigation of the crimes charged.

---

[13] In its minute entry, the court stated: "[w]ith respect to the government's motion *in limine* on 404(b) evidence [ECF No. 99], the government may, as background, refer to the fact that defendant was arrested on an outstanding warrant, but may not address the specifics of the warrant or underlying charge." (App. at 28.) The District Court also stated numerous times on the record that the information was admitted only for background purposes. (App. at 117, 119.) Therefore, Steiner's argument that the District Court may have improperly admitted the arrest warrant evidence as "intrinsic" evidence that directly proved the crime, as opposed to prior-act evidence under Rule 404(b), is meritless.

For the reasons that follow, we conclude that the District Court erred by admitting the arrest warrant.

### 1. Admission of the Arrest Warrant Under Rule 404(b)

We review the District Court's evidentiary rulings principally on an abuse of discretion standard, which occurs only when the district court's decision is "arbitrary, fanciful, or clearly unreasonable"—in short, where "no reasonable person would adopt the district court's view."[14] We conduct "plenary review, however, of [the District Court's] rulings to the extent they are based on a legal interpretation of the Federal Rules of Evidence."[15] This includes plenary review "of whether evidence falls within the scope of Rule 404(b)."[16]

Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove character or demonstrate action in conformity with those acts.[17] Prior-act evidence, though, may be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[18] To be admissible, prior-act evidence must satisfy the test set forth in *Huddleston v. United States*.[19] As the

---

[14] *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009).

[15] *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 131 (3d Cir. 1997).

[16] *United States v. Cruz*, 326 F.3d 392, 394 (3d Cir. 2003).

[17] Fed. R. Evid. 404(b)(1).

[18] Fed. R. Evid. 404(b)(2).

[19] 485 U.S. 681 (1988).

Supreme Court stated there, the proffered evidence must be: (1) offered for a proper purpose under Rule 404(b)(2); (2) relevant to that purpose; (3) sufficiently probative under the Rule 403 balancing requirement; and (4) accompanied by a limiting instruction, if requested.[20] And, "[u]nless the reason is apparent from the record, a mere list of the purposes found in Rule 404(b) is insufficient."[21] Indeed, "[t]he district court must put a chain of inferences into the record, none of which is the inference that the defendant has a propensity to commit this crime."[22]

In *United States v. Green*, we concluded that "allowing the jury to understand the circumstances surrounding the charged crime—completing the story—is a proper, non-propensity purpose under Rule 404(b)."[23] We also stated that prior-act evidence is admissible to supply "helpful background information to the finder of fact."[24] With all of this in mind, one might ask: is not all evidence helpful to providing background to the factfinder? The answer is yes. But not all helpful evidence is relevant to a proper purpose under Rule 404(b).

In fact, Steiner is correct that the majority of criminal cases in which we have deemed "background" a proper

---

[20] *Id.* at 691-92.

[21] *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992).

[22] *Id.*

[23] 617 F.3d 233, 247 (3d Cir. 2010).

[24] *Id.* at 250.

14

purpose involve conspiracies.[25]   And there is no conspiracy involved in this case.   Also, in at least one opinion that preceded our decision in *Green*, we specifically warned that, while courts have occasionally admitted prior crimes evidence as "background," "this label is uninformative at best and, at worst, can be an unacceptable substitute for the analysis required by Rule 404(b)."[26]

There are unique characteristics that render "background" a proper purpose for admitting prior-act evidence in conspiracy cases.   For instance, in proving the existence of a conspiracy, a court might allow a party to present background evidence revealing an ongoing

---

[25] *See, e.g.*, *United States v. O'Leary*, 739 F.2d 135, 136-37 (3d Cir. 1984) (identifying the need to show "the background of the charges [and] the parties' familiarity with one another" as a proper purpose); *United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir. 1982) (admitting similar criminal activity perpetrated before the period charged in the indictment to furnish essential background information, to demonstrate a continuing relationship between an unindicted co-conspirator and the defendant, and to assist the jurors in understanding the unindicted co-conspirator's role in the forgery scheme); *United States v. Dansker*, 537 F.2d 40, 58 (3d Cir. 1976) (in conspiracy case, upholding introduction of prior criminal acts by defendants because "the background information provided by this testimony enabled the jury to better understand [the witness's] role in the bribery scheme as well as his testimony as a whole").

[26] *United States v. Echeverri*, 854 F.2d 638, 644 (3d Cir. 1988).

relationship between co-conspirators.[27]  Likewise, this Court affirmed the admission of background evidence to help the jury understand one conspirator's role in a complex scheme.[28] But neither of those models applies in this case.

Here, Steiner is the only defendant.  There was no need for the government to explain a complicated backstory. We are not suggesting that conspiracy cases are the only ones in which background facts may be admissible as 404(b) evidence.  We are saying that, when the information needed to understand what happened in a case is straightforward and easily understood without reference to facts that do not bear on the charged offense, forcing extraneous and potentially prejudicial information into the record in the name of "background" is not defensible under Rule 404(b).  That, unfortunately, is what happened here.  Stants' tip entirely explained why the government was focusing on Steiner.  In fact, the arrest warrant evidence was completely irrelevant to

---

[27] *See*, *e.g.*, *United States v. Corbin*, No. 10-352, 2011 WL 2110831, at \*2 (E.D. Pa. May 26, 2011) (finding that the defendants' prior gunpoint robberies of drug dealers were admissible to establish the relationships between the defendants and to explain the background of the conspiracy), *aff'd*, 607 F. App'x 136, 139-40 (3d Cir. 2015) (nonprecedential).

[28] *See United States v. Butch*, 256 F.3d 171, 176 (3d Cir. 2001) (finding no abuse of discretion and affirming conviction where the District Court admitted the government's background evidence "to help the jury understand the co-conspirator's role in the scheme").

the government's case.[29]  We therefore find this case to be sufficiently distinct from cases in which "background" evidence may be admissible under Rule 404(b).

In *Green*, by contrast, we concluded that the background information—evidence that the defendant threatened to kill a police officer—was properly admitted under Rule 404(b) because it fit "into a chain of logical inferences" and explained why the defendant was under investigation for the crime charged, attempted possession with intent to distribute cocaine.[30]  We also held that the information was properly admitted for the purpose of proving the informant's motive to cooperate, which was put at issue by the defendant.[31]  We therefore find *Green* distinguishable insofar as the prior-act evidence there served to complete the story of the crime charged.  Here, we conclude that evidence of the outstanding arrest warrant on the unrelated sexual assault charge had nothing whatsoever to do with Steiner's charged  crime of felony possession of a weapon or ammunition under § 922(g).

Again, to be clear, we do not conclude that *any* evidence offered for the purpose of providing background is *only* admissible in conspiracy cases.  There may—and likely

---

[29] As to the second *Huddleston* factor, relevance, Fed. R. Evid. 401 provides that "[e]vidence is relevant if (1) it has any tendency to make a fact more or less probable than it would be without the evidence, and (2) the fact is of consequence in determining the action."

[30] *Green*, 617 F.3d at 250.

[31] *Id.*

will—be other situations in which such evidence is admissible outside of the conspiracy context. Nor do we venture to paint the absolute contours of when prior-act evidence may be admissible to provide background under Rule 404(b). We simply conclude that, on these facts, the District Court abused its discretion by admitting the arrest warrant evidence for the purpose of providing background.

To be sure, the District Court was not entirely, or even primarily, to blame for its error. The government played a central role. Here, the prosecutor wrongly asserted that the government needed the unrelated arrest warrant to prove that Steiner was guilty of felony possession. Yet it is clear to us that the government did not need the arrest warrant to try a case against Steiner at all. The government had Stants' tip, Stants' and Williams' testimony that Steiner owned the home in 2007 and possessed a shotgun, and a stipulation that Steiner was a felon. Taken together, this evidence strongly supported the government's theory that Steiner unlawfully possessed the firearm and ammunition. The only purpose the arrest warrant served was to improperly suggest that Steiner was predisposed to commit criminal acts.

In sum, we are deeply troubled by the government's inaccurate claim that the arrest warrant was "what led officers to [Steiner's] trailer in the first place," and we are persuaded that that inaccuracy led the District Court to err by admitting evidence of the warrant.[32] We therefore admonish the

---

[32] (App. at 116.)

18

government to take greater care in its representations to the trial court and not brandish Rule 404(b) so cavalierly.[33]

## 2. **Whether the error was harmless**

While we find that the District Court improperly admitted the arrest warrant, we conclude that the error was harmless.[34] We can call a nonconstitutional error harmless, and uphold the conviction, if there is a high probability that "the error did not contribute to the judgment," requiring us to have a "sure conviction that the error did not prejudice the defendant."[35]

First, the arrest warrant evidence had no prejudicial impact on the jury's determination as to Count One, because Steiner was found not guilty of that charge. It is therefore reasonable to infer that the evidence had no effect as to Count

---

[33] Because we conclude that the District Court erred by admitting the arrest warrant evidence as "background," we need not reach Steiner's argument that the court failed to conduct a proper Rule 403 analysis. Nor need we reach the government's argument that Steiner waived his Rule 403 argument by failing to object. And, as to the fourth *Huddleston* factor, we note that the District Court did not give a limiting instruction to the jury because Steiner did not request one.

[34] Fed. R. Crim. P. 52(a) provides: "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."

[35] *United States v. Caldwell*, 760 F.3d 267, 285 (3d Cir. 2014) (citations omitted); *see also United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002).

Two.  Second, the District Court did not disclose the conduct underlying the arrest warrant, that is, the alleged sexual assault of a minor.  Third, at trial, Steiner stipulated to having a prior felony conviction.  Also, when he took the stand, Steiner admitted that he was previously convicted of crimes of falsehood: burglary, theft, and felony forgery.  And finally, the ample evidence presented surrounding Steiner's ownership and occupation of the home, Stants' and Williams' testimony regarding the same, and the lack of evidence linking the antique ammunition in the garage to the ammunition found in the home, convinces us that the additional arrest warrant evidence did not affect the jury's guilty verdict as to Count Two.

We therefore conclude that any error in admitting the prior act evidence under Rule 404(b) was harmless.

## B.  Steiner's Jury Instruction Challenge

Next, Steiner argues in his briefs that the District Court erred by refusing to instruct jurors that they must unanimously agree as to which ammunition he possessed to find him guilty under Count Two.  In support of his claim, Steiner argues that the government improperly bundled into Count Two multiple, distinct violations of § 922(g), each of which should have been prosecuted as a separate violation of the statute.[36]  Put another way, he claims that the indictment

---

[36] The government argues that Steiner waived any "duplicity" argument by not raising it below.  We disagree.  Steiner never moved to dismiss the indictment before or during trial on the grounds that the government improperly joined possession of separate types of ammunition into one count.  However, Steiner's counsel clearly objected to the jury instruction,

was "duplicitous" because the government improperly joined possession of separate types of ammunition into one count.[37] To cure this defect, Steiner contends that the District Court should have instructed the jury that it had to unanimously determine which ammunition Steiner possessed to find him guilty on Count Two. By expressly declining to give this curative jury instruction, Steiner argues that the District Court deprived him of his Sixth Amendment right to a unanimous jury verdict, and therefore his conviction under Count Two should be vacated.

We reject Steiner's argument. In our view, the evidence at trial overwhelmingly demonstrated that Steiner possessed the ammunition in one part of the Meadow Avenue home, which he owned in 2007. For the additional reasons that follow, we therefore conclude the indictment properly charged Steiner with a single violation of § 922(g) under Count Two and that a special unanimity instruction was not required.

---

specifically requesting that the jury be instructed that it must agree as to which ammunition Steiner possessed and adding that the "indictment [c]ounts [were] confusing." (App. at 97.) In consequence, we find that Steiner's "duplicity" argument was preserved on appeal in connection with his jury instruction challenge.

[37] Count Two of the indictment charged possession of various pieces of ammunition in the "downstairs area" of the home.

Whether an indictment is duplicitous is a question of law subject to *de novo* review.[38]   We also review *de novo* "whether the jury instructions stated the proper legal standard."[39]   "We review the refusal to give a particular instruction or the wording of instructions for abuse of discretion."[40]

Duplicity is the improper combining of separate offenses into a single count.[41]   When a defendant's Sixth Amendment right to a unanimous jury verdict is jeopardized by a duplicitous indictment, a court can cure the indictment by issuing a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act.[42]

Under Federal Rule of Criminal Procedure 12(b)(3)(B), a motion alleging a defect in the indictment must be made before trial.  Yet while a defendant waives technical errors to an indictment by his failure to object to the duplicity before trial, courts have held that the alleged harm to the defendant's substantive rights resulting from a duplicitous indictment can be raised at trial or on appeal, notwithstanding

---

[38] *United States v. Haddy*, 134 F.3d 542, 547 (3d Cir. 1998).

[39] *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995).

[40] *United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006).

[41] *Haddy*, 134 F.3d at 548.

[42] *See, e.g., United States v. Newell*, 658 F.3d 1, 20-28 (1st Cir. 2011); *United States v. Yielding*, 657 F.3d 688, 702 (8th Cir. 2011); *United States v. Pietrantonio*, 637 F.3d 865, 869 (8th Cir. 2011); *United States v. Starks*, 472 F.3d 466, 471 (7th Cir. 2006).

the defendant's failure to make a pretrial motion.[43] "The rationale for this distinction is that, whereas Rule 12 applies only to defects in the institution of criminal proceedings . . . , a verdict rendered by a less-than-unanimous jury violates a defendant's Sixth Amendment rights by a harm that arises from the trial itself."[44]

Count Two of the indictment charged Steiner with a violation of 18 U.S.C. § 922(g), which, in relevant part, provides: "It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

To determine whether Count Two was duplicitous, we first focus on the "allowable unit of prosecution" to decide whether the indictment properly charges a violation of the relevant statute.[45] We have held that the allowable unit of

---

[43] *United States v. Adesida*, 129 F.3d 846, 849 (6th Cir. 1997); *see also United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010) (noting that "[i]t is black letter law that duplicitous indictments can be cured through appropriate jury instructions"); *Haddy*, 134 F.3d at 547-48.

[44] *United States v. Kakos*, 483 F.3d 441, 444 (6th Cir. 2007) (citing *Davis v. United States*, 411 U.S. 233, 241 (1973), and *Johnson v. Louisiana*, 406 U.S. 356, 369 (1972) (Powell, J., concurring)).

[45] *Haddy*, 134 F.3d at 548.

23

prosecution under § 922(g) is the "incident of possession," regardless of whether a defendant possessed more than one firearm, or possessed a firearm and ammunition.[46] In other words, we ask if the evidence establishes that the defendant committed a single act of possessing firearms or ammunition, or instead whether the evidence indicates that multiple, distinct acts of unlawful possession occurred.

We have also stated that simultaneous possession of multiple firearms or pieces of ammunition does not give rise to a separate offense for each firearm or piece of ammunition possessed.[47] Likewise, multiple convictions for possession of multiple firearms may be appropriate where the firearms in question were seized in different locations or if they were acquired in separate transactions.[48]

These observations lead us to the question of how we determine whether an indictment is duplicitous when someone is charged with felony possession of various types of ammunition, all of which are located in the basement of a home. In resolving Steiner's challenge, our prior cases provide us with sufficient guidance. In this case, we conclude that the indictment was not duplicitous and that a curative jury instruction was not required.

---

[46] *United States v. Tann*, 577 F.3d 533, 537 (3d Cir. 2009).

[47] *Id.*

[48] *See, e.g., United States v. Verrecchia*, 196 F.3d 294, 298 (1st Cir. 1999) (concluding that the government properly charged the defendant with two counts of possessing a firearm in violation § 922(g) where twenty-three guns were recovered from the same defendant in two separate locations).

In *United States v. Marino* and *United States v. Frankenberry*, we held that the simultaneous possession or receipt of several firearms by a convicted felon constituted a single offense under the predecessor statutes to § 922(g), absent a showing that the weapons were separately stored or acquired.[49] We further elaborated on the concept of simultaneous possession in *United States v. Tann*. In *Tann*, the indictment charged the defendant with two separate § 922(g) violations based upon possession of a gun found in the bathroom where he was arrested and ammunition that was located in his pocket at the same time.[50] There, we determined that the two items were simultaneously possessed. As a result, we concluded that possession of both a firearm and ammunition, seized at the same time in the same location, supported only one conviction and sentence under § 922(g).[51]

However, in *United States v. Kennedy*, we held that mere physical proximity does not demonstrate simultaneous possession.[52] There, we declined to find simultaneous possession where firearms were stored in two separate vehicles located on the same premises.[53] In reaching this conclusion, we specifically noted that, when determining

---

[49]*United States v. Frankenberry*, 696 F.2d 239, 245-46 (3d Cir. 1982) (analyzing 18 U.S.C. § 922(h)); *United States v. Marino*, 682 F.2d 449, 454 (3d Cir. 1982) (analyzing 18 U.S.C. § 1202(a)).

[50] *Tann*, 577 F.3d at 536-37.

[51] *Id.* at 537.

[52] 682 F.3d 244, 256 (3d Cir. 2012).

[53] *Id.*

whether firearms are simultaneously possessed, what matters is the defendant's "course of . . . treatment of the firearms," which "may not be viewed in a frozen, momentary state immediately prior to the seizure."[54] We therefore held that the district court erred when it merged two separate felony possession counts for purposes of resentencing the defendant.[55]

These cases demonstrate that determining whether individual firearms or ammunition were simultaneously possessed is a highly fact-driven inquiry that depends on the circumstances surrounding a defendant's alleged conduct.

Here, other than Steiner's testimony, there is little, if any, evidence supporting Steiner's contention that the ammunition found in the home was acquired at different times and for different purposes, or that it was separately stored in the home. By contrast, the evidence at trial strongly demonstrated that Steiner owned the home in 2007 and that all of the ammunition was stored in various parts of the basement.[56] Moreover, at least some of the 12-gauge ammunition was literally found resting under Steiner's notice of impending warrant of arrest. And, while Steiner's ex-wife

---

[54] *Id.* at 255-56 (quoting *United States v. Mullins*, 698 F.2d 686, 687 (4th Cir. 1983)).

[55] *Id.*

[56] While Stants and Mark Williams testified that Steiner sold the house before the August 29 search and that Williams' wife notarized the paperwork, other testimony also confirms that Steiner owned the house sometime in 2007 before abandoning it.

testified that she brought various types of antique ammunition into the garage in 1999, none of the ammunition that Steiner was charged with possessing was located in the garage, and none of the physical evidence specifically linked the ammunition found in the basement to Greta Steiner or her deceased ex-husband. Moreover, even if we accepted that Greta Steiner purchased the ammunition found in the basement in the first instance, the jury could have found that Steiner himself later acquired the ammunition from Greta Steiner, and not, as Steiner claims, from other sources on other occasions.

In sum, we conclude that the indictment was not duplicitous. Accordingly, the District Court's failure to give a special unanimity instruction as to Count Two did not constitute a violation of Steiner's Sixth Amendment right to a unanimous jury verdict.[57]

---

[57] *Kakos*, 483 F.3d at 446.

Steiner also asks us to reconsider our current legal standard for assessing claims of pre-indictment delay. *See United States v. Beckett*, 208 F.3d 140, 150-51 (3d Cir. 2000) (defendant must show both actual prejudice and deliberate delay) (citing *United States v. Ismaili*, 828 F.2d 153, 168 (3d Cir. 1987)). However, "[u]nder a longstanding practice of our Court, a panel may not overrule another panel decision." *Pa. Pharmacists Ass'n v. Houstoun*, 283 F.3d 531, 534 (3d Cir. 2002); *see also* 3d Cir. I.O.P. 9.1. We therefore will not undertake to reconsider our standard for reviewing claims of pre-indictment delay. Moreover, we conclude that contrary to Steiner's assertion, the District Court applied the correct legal

### III. CHALLENGE TO STEINER'S SENTENCE AFTER *MATHIS*

We now turn to Steiner's challenge to his sentence, which he invoked in his petition for certiorari (but not in his initial appeal to us).[58]

By way of background, the offense Guideline applicable to Steiner's § 922(g) conviction is § 2K2.1,[59] which sets out various base offense levels that depend on the circumstances of the offense and the defendant's criminal history. At sentencing, the District Court determined that the appropriate base offense level was 20—corresponding to § 2K2.1(a)(4)(A)—because of a predicate conviction for a "crime of violence": a 1993 Pennsylvania burglary conviction. Section 2K2.1 does not itself define "crime of violence." Instead, it refers to the language of § 4B1.2(a), which specifically defines "burglary of a dwelling" as a crime of violence. Alongside Steiner's criminal history score of VI, a base offense level of 20 yielded a Guidelines range of 70–87 months in prison. As mentioned earlier, Steiner was sentenced to the high end of that range, receiving 87 months.

---

standard when it denied Steiner's motion to dismiss the indictment for pre-indictment delay.

[58] Steiner's sentence was the subject of extensive litigation before the District Court, but we need not recount that history now. *See generally* Tentative Findings and Rulings, ECF No. 152 (discussing the parties' sentencing positions and the District Court's preliminary findings).

[59] We refer throughout to the 2013 edition of the Guidelines manual.

Steiner filed a petition for certiorari on the basis of the Supreme Court's intervening decision in *Mathis v. United States*.[60] Pointing to *Mathis*, Steiner argued that his 1993 Pennsylvania burglary conviction was no longer categorically a crime of violence. Without the enhancement, Steiner's base offense level would have been 14, not 20, thereby yielding a sentencing range of 37 to 46 months' imprisonment—a range of possibilities all markedly below the 87-month within-Guideline sentence he had actually received.

As instructed by the Supreme Court's GVR order, we now consider the application of *Mathis* to Steiner's sentence. Although the parties agree on *Mathis*'s effect, it is not for them to say. Rather, "[t]his question . . . is one for the courts—not the parties—to decide."[61]

*Mathis* is the latest in the Supreme Court's series of opinions on how prior convictions can be used as predicate "violent felonies" under the Armed Career Criminal Act ("ACCA," 18 U.S.C. § 924(e)), precedent that generally applies also to "crimes of violence" enhancements under the Guidelines.[62] *Mathis* further refined the Court's jurisprudence about when, in applying an elements-based enhancement or analysis, a court may use the "modified categorical approach"—appropriate for statutes that are "divisible," listing elements in the alternative or describing

---

[60] 136 S. Ct. 2243 (2016).

[61] *United States v. Calabretta*, 831 F.3d 128, 133 (3d Cir. 2016) (citing *Sibron v. New York*, 392 U.S. 40, 58 (1968)).

[62] *See United States v. Brown*, 765 F.3d 185, 189 n.2 (3d Cir. 2014).

separate crimes, and which is employed to determine what crime a defendant was actually convicted of—instead of the "categorical approach," to which we turn when a statute is not divisible.[63]

In *Mathis*, the Supreme Court analyzed an Iowa burglary statute that prohibited unlawful entry into not just "buildings or other structures"—which is the "generic" federal definition of burglary[64]—but also into "land, water, or air vehicle[s]."[65] The Court explained that the Iowa statute laid out not separate elements, but alternative ways of satisfying a single locational element; "the statute defines one crime, with one set of elements, broader than generic burglary."[66] Because a "state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense," a conviction under Iowa's burglary statute could not suffice under the proper elements-based categorical approach.[67] The District Court had erred by using a "modified categorical approach" instead, treating the statute's separate means of committing the offense as if they were elements. The District Court therefore looked at the

---

[63] *See Singh v. Att'y Gen.*, 839 F.3d 273, 278-79 (3d Cir. 2016) (discussing the categorical and modified categorical approaches post-*Mathis* in the context of an immigration case).

[64] *See Mathis*, 136 S. Ct. at 2248, 2250 (citations omitted).

[65] *Id.* at 2250 (quoting Iowa Code § 702.12 (2013)).

[66] *Id.*

[67] *Id.* at 2251.

30

"records of [Mathis's] prior convictions [to] determin[e] that he had burgled structures, rather than vehicles."[68]

The relevant 1992 Pennsylvania statute has many of the same features as the Iowa statute discussed in *Mathis*. The Pennsylvania statute defined burglary as "enter[ing] a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter."[69] "Occupied structure," addressed one section earlier, meant "[a]ny structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present."[70]

The question *Mathis* tells us to ask—are these alternate means or alternate elements?—can be resolved by reference to "authoritative sources of state law" or, if necessary, "the record of a prior conviction itself . . . for the sole and limited purpose of determining whether" we confront means or

---

[68] *See id.* at 2250, 2253.

[69] 18 Pa. Cons. Stat. § 3502(A) (1992). Pennsylvania's burglary statute has been amended several times since 1992, with the most recent amendment taking effect in early January 2017. *See* An Act Amending Titles 18 (Crimes and Offenses) and 42 (Judiciary and Judicial Procedure) of the Pennsylvania Consolidated Statutes, 2016 Pa. Laws 158. We do not today formally reach *Mathis*'s effect on convictions under the amended versions of the burglary statute.

[70] 18 Pa. Cons. Stat. § 3501 (1992).

elements.[71] In this case, the 1993 Pennsylvania information charged Steiner with "feloniously . . . enter[ing] a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein," although the information did identify the specific "location" immediately following.[72] To the extent this is equivocal, we note that Pennsylvania's model criminal jury instructions, albeit for the current version of the statute, "do[] not require the jury to unanimously agree on the nature of the location; it can be a building, or occupied structure, or a separately secured or occupied portion of a building or structure."[73] By contrast, it appears that jury findings are generally required for a defense pertaining to appropriate grading of the burglary offense, namely whether the structure was not adapted for overnight accommodation and was not occupied.[74] The Pennsylvania Supreme Court has also referred to its burglary statute as an "expan[sion]" of the "common law definition" of the crime, enacted to "recognize[] that non-privileged entries into *any* of these areas is a burglary because such entries pose a threat of violence to persons."[75] This discussion of the broad scope of

---

[71] *Mathis*, 136 S. Ct. at 2256-57 (internal quotation marks and citation omitted).

[72] *See* Information, ECF No. 144-1.

[73] *United States v. Harris*, No. 1:CR-06-0268, ___ F. Supp. 3d ___, 2016 WL 4539183, at *11 (M.D. Pa. Aug. 31, 2016) (citing Pennsylvania Suggested Standard Criminal Jury Instructions § 15.3502).

[74] *See* 18 Pa. Cons. Stat. § 3502(C)(1) (1992); *Commonwealth v. Conaway*, 105 A.3d 755, 763 (Pa. Super. Ct. 2014), *appeal denied*, 118 A.3d 1107 (Pa. 2015).

[75] *Commonwealth v. Rolan*, 549 A.2d 553, 559 (Pa. 1988).

burglary as a single crime that reaches multiple kinds of unlawful entry strongly suggests that the statute's breadth turns on means, not elements.

We therefore hold that these are alternative means of committing the core burglary element.[76] The statute is not divisible and, after *Mathis,* a categorical approach, rather than a modified categorical approach, must be used.

We pause to recognize that other Courts of Appeals have, after *Mathis*, held that various state burglary statutes set out different elements, and not different means, based on the wording of particular statutes. The Iowa burglary statute analyzed in *Mathis* defines burglary as the entering of "an occupied structure," a term it then defines elsewhere.[77] In other words, the Iowa burglary statute itself makes reference to a *single* locational element without employing a disjunctive list. In *United States v. Gundy*, by contrast, the Eleventh

---

[76] This comports, to an extent, with our 1996 decision in *United States v. Bennett*, 100 F.3d 1105 (3d Cir. 1996). Reaching the same statutory language, we held that the Pennsylvania definition of occupied structure "makes Pennsylvania's burglary statute broader than Congress's generic view of burglary," as it reaches scenarios such as the unauthorized entry of a car. *Id.* at 1109. While at the time we thought that the statute's breadth authorized use of what would now be called the modified categorical approach, *see id.* at 1110, it is now clear under *Mathis* that alternative means, rather than alternative elements, do not render the statute divisible.

[77] *See* Iowa Code §§ 713.1 (defining burglary), 702.12 (defining occupied structure).

Circuit confronted a Georgia statute that listed what the court described as "three subsets of different locational elements, stated in the alternative and in the disjunctive."[78] Informed by an analysis of Georgia state opinions about burglary, the divided Eleventh Circuit panel determined that the statute listed alternative elements, not means, and was thus divisible.[79] Other courts have reached similar conclusions.[80]

Based on our discussion above of Pennsylvania law and practice, as well as the substantial overlap between "building" and "occupied structure" under the statutory definition, we believe that we are on solid footing. Nevertheless, the divergence of outcomes after *Mathis* suggests that the "elements or means" inquiry is not quite as easy as the Supreme Court thought, not the least because state legislatures and state courts do not draft their laws and craft their decisions with this particular distinction in mind.

Returning to our analysis, we next compare the Pennsylvania statute to the generic offense of "burglary of a dwelling." We have previously defined "dwelling" by

---

[78] 842 F.3d 1156, 1166-67 (11th Cir. 2016) (citing Ga. Code Ann. § 16-7-1(a) (2011)).

[79] *See id.* at 1167-68.

[80] *See, e.g.*, *United States v. Sykes*, 844 F.3d 712, 715-16 (8th Cir. 2016) (coming to a similar outcome); *United States v. Uribe*, 838 F.3d 667, 670 (5th Cir. 2016) (same). *But see United States v. Edwards*, 836 F.3d 831, 834-38 (7th Cir. 2016) (finding that disjunctive parts of a statute were means, not elements, while observing that state decisions and practices did not definitively answer the question).

reference to the then-current Sixth Edition of Black's Law Dictionary: a "building or portion thereof, a tent, a mobile home, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence."[81] The Pennsylvania statute plainly sweeps more broadly than "burglary" narrowed to dwellings.[82]

Under the categorical approach, then, a conviction under the Pennsylvania burglary statute in question is not a predicate § 4B1.2 "crime of violence."[83]   Thus, Steiner's

---

[81] *United States v. McClenton*, 53 F.3d 584, 587 (3d Cir. 1995) (emphasis omitted) (quoting *Dwelling*, Black's Law Dictionary (6th ed. 1990)).   Beginning with the Seventh edition of Black's Law Dictionary, "Dwelling" falls under the main entry of "Dwelling-house," of which it is considered to be an abbreviation.   The "Criminal Law" meaning of "Dwelling-house" is currently defined as follows: "A building, a part of a building, a tent, a mobile home, or another enclosed space that is used or intended for use as a human habitation." *Dwelling-house*, Black's Law Dictionary (10th ed. 2014).

[82] It appears to be broader than plain generic burglary, too. For instance, the unlawful entry of a river gambling boat, which is a "vehicle" adapted for "carrying on business therein," seems to fall under the Pennsylvania statute's definition of "burglary," but not the generic federal offense as articulated by the Supreme Court.

[83] We have previously held that the "residual clause" of § 4B1.2 is unconstitutionally vague.   *See Calabretta*, 831 F.3d at 133-34.   The precise question of the clause's validity is now pending before the United States Supreme Court in *Beckles v. United States*, No. 15-8544.   If it is reinstated by

1993 burglary conviction should not have been used to enhance his sentence. As the government concedes plain error,[84] we will vacate the judgment of sentence and remand for expedited resentencing.

We must reach one final matter before closing: Steiner contends that he has already served a term of imprisonment longer than would be authorized by a Guidelines range without the "crime of violence" enhancement. As we noted above, at offense level 14 and with a criminal history of VI, Steiner's range would be 37–46 months instead of the 70–87 months he faced before. Although Steiner does not provide us with the Bureau of Prisons information he used to compute the months he has already served—he was serving a state sentence when the underlying federal criminal proceedings began, and there is no obvious indication on the docket of when he was formally committed to the Bureau of Prisons—it appears likely that he has already been in the custody of the Bureau of Prisons for over 46 months, and the government does not dispute his characterization of his time served. We therefore will order that Steiner be released from custody, subject to the conditions of supervised release imposed in the District Court's original judgment, pending expedited resentencing.

---

the Supreme Court, the District Court should not consider it on remand, as the government has not argued that it should apply.

[84] *See United States v. Knight*, 266 F.3d 203, 206-09 & n.7 (3d Cir. 2001).

## IV. CONCLUSION

For the reasons set forth above, we will affirm the District Court's judgment of conviction, vacate its judgment of sentence, grant Steiner's motion for remand, and remand for expedited resentencing. Steiner is ordered released pending his resentencing.